The STATE of Ohio, Appellee,

v.

SUBER, Appellant.

[Cite as *State v. Suber,* 154 Ohio App.3d 681, 2003-Ohio-5210.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–1419.

Decided Sept. 30, 2003.

Ron O'Brien, Franklin County Prosecuting Attorney, and Heather R. Saling, Assistant Prosecuting Attorney, for appellee.

Yeura R. Venters, Franklin County Public Defender, and John W. Keeling, Assistant Public Defender, for appellant.

DESHLER, Judge.

{¶ 1} Defendant-appellant, Paul W. Suber, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas after a bench trial in which appellant was found guilty of six counts of passing bad checks and one count of extortion.

{¶ 2} The charges against appellant arose from a series of transactions by which appellant sought to profit from the federal regulatory system, mandated by

the Expedited Funds Availability Act of 1987 ("EFAA"), codified at Section 4001, Title 12, U.S.Code., et seq., under which banks are obligated to make funds promptly available to account holders who have deposited a check in their account. Since this availability of funds is mandated under a set schedule and occurs prior to the depository bank being assured that the deposited check will be honored by the payor bank, it is uniquely useful to persons undertaking a check-kiting scheme. See, generally, *First Natl. Bank in Harvey v. Colonial Bank* (N.D.Ill.1995), 898 F.Supp. 1220.

{¶ 3} Appellant initiated his scheme by depositing a check for $70,000, written by one James T. McBride, an acquaintance of appellant, in his checking account with Firstar Bank. Appellant admitted in conversations with investigators and did not dispute at trial that he knew that McBride's check was drawn on a closed business account with the Delaware County Bank and Trust and would not be paid by that institution. Appellant thereafter monitored the available balance on his Firstar checking account using ATM machines.

{¶ 4} When appellant ascertained that sufficient funds had been made available by Firstar, he wrote 16 checks on his account, of which the bank paid seven for a loss of $3,914.32. Shortly thereafter, Firstar became aware that the $70,000 check deposited in appellant's account would not be paid by Delaware County Bank and Trust, and it adjusted appellant's checking-account balance accordingly and notified him that the account was overdrawn. When appellant refused to make good the overdraft, Firstar referred the matter to the Worthington Police Department.

{¶ 5} One of the checks drawn on appellant's Firstar account, in the amount of $7,659, was deposited into appellant's account with First Merit Bank. Repeating on a smaller scale the process undertaken with his Firstar account, appellant waited until First Merit had made funds available but before the check had been returned by Firstar for insufficient funds and withdrew $4,000 in cash from his First Merit account.

{¶ 6} When First Merit requested that appellant cover the overdraft, appellant attempted to do so by submitting two further checks drawn on the same overdrawn First Merit account. Again due to appellant's refusal to effectively make good on his overdraft, First Merit also referred this matter to the Worthington Police Department.

{¶ 7} Appellant was subsequently arrested by Worthington police. During an interview with a police detective, he threatened to file liens against the detective's personal assets and real estate if he was not immediately released. These threats by appellant gave rise to the extortion charge against him.

{¶ 8} At a hearing prior to trial, appellant waived his right to a jury trial and indicated that he intended to forego the assistance of legal counsel and defend

himself. The court ordered a competency evaluation and, after reviewing the evaluation and cautioning appellant regarding the risks of representing himself, allowed the matter to go forward with appointed counsel remaining available to provide any assistance requested. At that time, the court specifically stated on the record that it would require a written waiver of counsel to be executed by appellant; such a written waiver, however, does not appear in the record, and appellant asserts in this appeal that it was, in fact, never executed.

{¶ 9} On the scheduled trial date, appellant appeared before the trial court and requested a continuance because jail supervisors had not permitted him access to the jail library to prepare his defense. The trial court denied the requested continuance. The matter then proceeded to trial, and appellant did, in fact, represent himself with some assistance from appointed counsel.

{¶ 10} The state's evidence consisted largely of documents and testimony establishing account balances, checks written, checks dishonored, and checks paid. The prosecution also presented the testimony of the Worthington police detective who was the object of the alleged extortion.

{¶ 11} Appellant's defense was based entirely upon legal arguments invoking federal statutes and regulations governing availability of funds for depositors and time limits upon payor banks for giving notice of dishonor of checks under Article 4 of the Uniform Commercial Code ("UCC"). Other than these assertions that he had done nothing illegal according to his interpretation of relevant banking law and that the cited laws superseded any criminal statutes, appellant made little effort to rebut the elements of the various state-law offenses with which he was charged.

{¶ 12} The trial concluded with findings of guilty on all counts of the indictment. Appellant was accordingly convicted of six counts of passing bad checks, in violation of R.C. 2913.11. Two of these counts involved checks for payment of $500 or more but less than $5,000, constituting felonies of the fifth degree; the remaining four involved checks of $5,000 or greater but less than $100,000, constituting felonies of the fourth degree. For his threats against the arresting detective, appellant was convicted of extortion, a violation of R.C. 2905.11 and a felony of the third degree. After a presentence investigation, the court imposed sentences of ten months for each of the fifth-degree felony bad-check charges, 12 months for each of the fourth-degree felony bad-check charges, and five years on the extortion charge, all sentences to be served consecutively with each other and consecutively with a companion case in the Muskingum County Court of Common Pleas.[1] The court also ordered restitution to First Merit Bank and to U.S. Bank, Firstar's corporate successor.

---

1. It is unclear from the record whether sentence had already been imposed in the Muskingum County case at the time of sentencing of the present case, and we expressly make no

{¶ 13} Appellant has timely appealed and brings the following assignments of error:

## ASSIGNMENT OF ERROR NUMBER ONE

"The trial court erred when it entered judgment against the defendant on the charge of extortion when the evidence presented on behalf of the state was insufficient to sustain this finding by proof beyond a reasonable doubt and the judgment was against the manifest weight of the evidence presented."

## ASSIGNMENT OF ERROR NUMBER TWO

"The trial court erred when it failed to adequately and properly advise the defendant of his right to counsel and by failing to fully inquire and determine that any waiver of counsel was made knowingly, intelligently, and voluntarily by the defendant. The court further erred when it failed to obtain the waiver of counsel in writing as required by law."

## ASSIGNMENT OF ERROR NUMBER THREE

"The trial court erred when it entered judgment against the defendant on the passing bad check charges contained in counts five and six of the indictment when the evidence presented on behalf of the state was insufficient to sustain the finding by proof beyond a reasonable doubt that the defendant issued the checks with the purpose to defraud since the checks were issued to the bank for a pre-existing debt and the bank knew, upon receipt, that the checks were worthless."

## ASSIGNMENT OF ERROR NUMBER FOUR

"The trial court erred when it entered judgment against the defendant on the passing bad check charge contained in Count One of the indictment when the evidence presented on behalf of the state was insufficient to sustain the finding by proof beyond a reasonable doubt that the defendant issued the check knowing that it would be dishonored since the check was never dishonored."

{¶ 14} Appellant's second assignment of error raises the threshold issue of whether appellant's waiver of counsel at trial complied with all necessary safeguards to his right to counsel guaranteed by the Sixth Amendment to the United States Constitution. It will accordingly be addressed first.

---

determination as to the propriety of the trial court's determination that the sentences imposed should be served consecutively with those imposed in Muskingum County.

{¶ 15} In order to be effective, a waiver of trial counsel must be made knowingly, voluntarily, and intelligently. *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph one of the syllabus, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson*, paragraph two of the syllabus. " 'To be valid [a defendant's] waiver [of counsel] must be made with an apprehension of the nature of the charges, the statutory offense included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all of the circumstances under which such a plea is tendered.' " *State v. Fair* (Sept. 17, 1996), Franklin App. Nos. 96APA01–63 and 96APA01–64, 1996 WL 532186, quoting *Von Moltke v. Gillies* (1948), 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309. "[T]he determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461. A sketchy or minimal inquiry touching upon only some of the above-enumerated factors will not adequately establish an effective waiver of counsel. *State v. McQueen* (1997), 124 Ohio App.3d 444, 447, 706 N.E.2d 423.

{¶ 16} Appellant raises several grounds for finding that his waiver was not knowing, voluntary, and intelligent. He asserts that the colloquy between himself and the trial court was inadequate to protect his rights and dissuade him from the unwise course of representing himself; he asserts that the court did not adequately inquire into the possibility that his desire to forego counsel was prompted by a lack of confidence in the ability or diligence of appointed counsel; he asserts that the court did not re-emphasize the dangers of proceeding pro se after he was denied a continuance to prepare for trial; and lastly he argues that the lack of a written waiver is sufficient in itself to show the absence of a valid waiver of counsel.

{¶ 17} In some aspects, the record before us indicates that the trial court did in fact extend extensive cautionary advice to appellant regarding the risks of defending himself and the benefits of proceeding with counsel. At the initial hearing, the court pointed out that appellant's lack of legal education would be a handicap and that the complexity of some of the charges against him would make them difficult to defend. The court duly examined the contents of the competen-

cy evaluation performed upon appellant by a psychologist, who opined that appellant was competent to stand trial and moreover had a reasonably thorough knowledge of the law and facts pertaining to the various counts against him.

{¶ 18} There is also no indication in the present case that appellant was dissatisfied with the performance of appointed counsel beyond the bare fact that counsel refused to pursue the banking-law defenses that appellant believed justified his conduct. It is apparent that appellant's theories of defense were rooted more in his political and philosophical convictions rather than on application of Ohio criminal law to the facts of his case, and appointed counsel seems to have, understandably, wished to pursue a more conventional and promising line of defense. The record beyond this is bare of any indication that appellant was dissatisfied with the effort and competence of appointed counsel, and the court was not obligated to pursue this possibility in more detail. *State v. Keith* (1997), 79 Ohio St.3d 514, 524, 684 N.E.2d 47.

{¶ 19} The two other aspects of this issue raised by appellant, however, militate for reversal. The trial court, when it denied appellant's request for a continuance, was necessarily aware that appellant claimed he had been denied access to the jailhouse library and thus was not prepared for trial. The trial court did not, at this juncture, effectively re-express the concerns regarding appellant's self-representation. This denial of a continuance would have been of no great consequence had appellant been represented by counsel well versed in Ohio criminal law. To a pro se defendant facing a reasonably complex set of charges, however, the consequences should have been more clearly emphasized.

{¶ 20} It is not a remote speculation to conclude that appellant, with a minimal opportunity to avail himself of the legal research resources of the county jail, would have become aware that he was erroneous in his deluded belief that he had somehow discovered a statutory loophole in banking law big enough to drive a truckload of cash through. Indeed, comparable opportunistic distortions of Section 4001, Title 12, U.S.Code, et seq., and UCC, Article 4, have never been accepted by the courts. See, e.g., *Essex Constr. Corp. v. Indus. Bank of Washington* (D.Md.1995), 913 F.Supp. 416, 418 ("Plaintiff's argument therefore amounts to a contention that a depositor's right to funds becomes absolute at the time a deposit is required to become available pursuant to the EFAA. * * * The EFAA requires that banks provide prompt access to valid deposits, not that banks assume liability for bad checks given to depositors"). Had the trial court reiterated its concerns regarding the nature and complexity of the charges against appellant, the possible sentences he risked, and the advantages of proceeding with counsel because of his lack of preparation, the fact that appellant was totally unprepared to address the substance of the serious charges against him might well have convinced him not to forego the assistance of counsel,

particularly since counsel was present and prepared to argue the pertinent law rather than appellant's dubious theories. The absence of further inquiry at this point is sufficient to conclude that appellant's waiver of counsel was not knowing, voluntary, and intelligent, because it is apparent that appellant was not proceeding "with eyes open" to the "dangers and disadvantages of self representation." *Faretta*, supra, 422 U.S. at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562.

{¶ 21} Therefore, we find that the colloquy was insufficient to protect appellant's constitutional right to counsel in that the trial court made insufficient inquiry to determine whether appellant fully understood and intelligently relinquished that right, as mandated by *Gibson* and *Faretta*.

{¶ 22} We also agree with appellant's argument that his waiver was not knowing, voluntary, and intelligent on the sole basis that he did not execute the written waiver of counsel required by Crim.R. 44(C). We make this determination fully aware that it represents a departure from our past holdings. Crim.R. 44(C) provides as follows: "Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases, the waiver shall be in writing."

{¶ 23} This court has for some years applied a prejudicial-error standard to the written waiver requirement of Crim.R. 44(C), holding that, in the presence of an adequate colloquy between court and defendant regarding the possible consequences of proceeding without counsel, the absence of a written waiver is not constitutionally defective per se. *State v. Jackson* (Sept. 4, 1990), Franklin App. No. 89AP–1344, 1990 WL 129284; *Fair*, supra; *State v. Allen* (Nov. 20, 1997), Franklin App. No. 97APA01–51, 1997 WL 723192 ("[u]nder the circumstances of this case, we find that the failure to obtain a written waiver of counsel was not prejudicial in light of the extensive evidence in the transcript indicating that appellant was fully warned of the dangers of self-representation").

{¶ 24} Other Ohio appellate districts, however, have unequivocally differed with us on this question. *State v. Melton* (May 4, 2000), Cuyahoga App. No. 75792, 2000 WL 546005; *State v. Campbell* (1999), 132 Ohio App.3d 880, 726 N.E.2d 615 (Third District); *State v. Burl* (July 3, 1991), Hamilton App. Nos. C–900514 and C–900542, 1991 WL 118213; *State v. Crawford* (Apr. 13, 1984), Sandusky App. No. S–83–28, 1984 WL 7835. Upon due reflection prompted by the facts of the present case, we find that a change in our position and adoption of the view held by the majority of Ohio appellate districts is warranted.

{¶ 25} While there is no comparable federal requirement in rule or case law, the Ohio requirement that a waiver of trial counsel be reduced to writing, even in the presence of an adequate colloquy between court and defendant, is easy to justify in light of the importance of the right being waived. Compelling a

defendant to contemplate, in black and white and without verbal ambivalence, the import of his choice to proceed without counsel is to ensure that the defendant will fully confront the potentially serious consequences thereof. It serves as the final, indelible punctuation mark to the necessarily formal and deliberate process by which courts investigate and accept or reject a defendant's request to proceed without counsel. In short, it is an effective and efficient means of better ascertaining that a defendant knowingly, intelligently, and voluntarily waived this fundamental constitutional right.

{¶ 26} Crim.R. 44(C)'s requirement of a written waiver is not phrased in hortatory terms: "in serious offense cases, the waiver *shall* be in writing." (Emphasis added.) We now conclude that our prior prejudicial-error standard inappropriately disregards the mandatory language of the rule, and that noncompliance with its explicit language should give rise to reversible error. "Compliance with Crim.R. 44 ensures that an accused facing a term of incarceration is not tried without the assistance of counsel unless the accused knowingly, intelligently, and voluntarily waives his right to counsel. * * * Because this procedural rule bears on a defendant's constitutionally protected right to have the assistance of counsel, a defendant tried in violation of the protections afforded by Crim.R. 44 could not have been tried fairly." *Campbell,* 132 Ohio App.3d at 883, 726 N.E.2d 615.

{¶ 27} Finally, we note that similar requirements under Crim.R. 23(A) for a written waiver of the right to jury trial have always been strictly enforced. *State v. Tate* (1979), 59 Ohio St.2d 50, 13 O.O.3d 36, 391 N.E.2d 738; *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766.

{¶ 28} Accordingly we find that in this case the absence of a written waiver of trial counsel was reversible error.

{¶ 29} Based upon the foregoing, appellant's second assignment of error is sustained. We find that appellant must be granted a new trial because his waiver of counsel was not knowing, voluntary, and intelligent, and because the record bears no trace of the written waiver required by Crim.R. 44(C).

{¶ 30} Although our disposition of appellant's second assignment of error clearly moots some aspects of the remaining three, to the extent that they raise arguments regarding the sufficiency of the evidence they must be addressed, since a reversal on sufficiency grounds would bar retrial on the counts affected. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶ 31} Appellant's first assignment of error asserts that the state did not meet its burden of proving the elements of extortion. The evidence in support of this count of the indictment was based on the testimony of Tammy Floyd, a detective with the Worthington Police Department. Detective Floyd arrested

appellant on a warrant and attempted to interview him. Appellant was uncooperative and demanded to be released. Detective Floyd gave the following testimony summarizing appellant's threats against her: "[I]f I chose to disregard his request, that he would take the equity in my property, file liens, basically, against my assets." Detective Floyd did not release appellant and had him transported to the Franklin County Jail. Immediately thereafter, she received a letter purportedly signed by appellant. This letter, which is in the record, is couched in pseudo-commercial jargon and purports to be an instrument allowing appellant to "take the equity in 374 Highland Avenue, Worthington, Ohio" (the Worthington Police Headquarters) in accordance with "UCC9–613."

{¶ 32} The trial court found that the threat to place liens on Detective Floyd's personal property if she did not release appellant constituted the crime of extortion. The trial court specifically stated that it considered only the threat against Detective Floyd personally and did not rely on the letter threatening some sort of property action against the Worthington Police Headquarters, since the detective had no personal interest in this property. We agree with the trial court that the letter is not germane to the extortion attempt against Detective Floyd and further agree that, by itself, the threat to file fictional liens could support one of the elements of the crime of extortion.

{¶ 33} The elements of extortion are set forth in R.C. 2905.11. For purposes of the present case, the elements are that appellant must have, with a purpose to induce another to commit an unlawful act, threatened to commit a felony. Appellant was attempting to induce Detective Floyd to release him. If she had, it would have been an illegal act: dereliction of duty in violation of R.C. 2921.44(A). In order to induce Detective Floyd to release him, appellant threatened to place liens upon her personal property. The state asserts that this constituted the crime of intimidation, a violation of R.C. 2921.03. The elements of intimidation are (1) knowingly, (2) by force or unlawful threat of harm to any person or property, or (3) by filing, recording, or using a false or fraudulent writing with malicious purpose in bad faith or in a reckless manner, (4) attempting to influence, intimidate, or hinder a public servant from discharging their duty.[2] Intimidation is a felony of the third degree.

{¶ 34} In the present case, we find that the state presented evidence that appellant had threatened to use a false or fraudulent writing with malicious purpose in order to intimidate Detective Floyd into a dereliction of her duty. Since intimidation is a felony, dereliction of duty is an illegal act, and appellant, if

---

**2.** We note that two competing versions of R.C. 2921.03 were passed by the legislature in 1996; the earlier of the two does not include the false or fraudulent writing language applicable to the present case. We rely, however, on the later-enacted version, H.B. 644, effective November 6, 1996, which contains the appropriate language.

the testimony were believed, made the threat, the elements of extortion were met in the present case. Appellant's conviction for extortion was, therefore, supported by sufficient evidence, and appellant's first assignment of error is accordingly overruled.

{¶ 35} Appellant's third assignment of error asserts that the trial court's judgment finding appellant guilty on two of the bad-check charges against him, counts five and six of the indictment, was not supported by sufficient evidence.

{¶ 36} The two checks in question were written by appellant on his First Merit account and presented for deposit on that very same account in order to make good the overdraft created by the dishonor of the checks written on appellant's Firstar account and used to fund the First Merit account. Appellant argues that there was not sufficient evidence to support these two bad-check counts. Appellant's position is that the elements of the crime of passing bad checks include an attempt to defraud, and because the checks were tendered to a payee who knew or should have known that there were insufficient funds, First Merit being both the payee and payor bank, the element of intent to defraud is not met.

{¶ 37} Appellant relies upon *State v. Edwards* (2001), 141 Ohio App.3d 388, 395, 751 N.E.2d 510, for the general proposition that "when the payee knows that a check is not collectible at the time it is tendered, there can be no crime of passing a bad check." *Edwards,* we initially note, is distinguishable on its facts from the present case, as it involved a payee who tendered a postdated check with the assurance from the drawer that the check would eventually be funded. The question of intent to defraud is therefore more clouded in *Edwards* than it is in the present case, where appellant knew when he tendered the check that, not only was the account insufficiently funded to cover the checks, but due to the fact that his account balances at both First Merit and Firstar were based ultimately on a chain of instruments that were certain be dishonored, the First Merit account upon which the two checks were drawn would never be funded sufficiently to cover the checks.

{¶ 38} The crime of passing a bad check in Ohio is set forth in R.C. 2913.11:

"(A) No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored.

"(B) For purposes of this section, a person who issues or transfers a check or other negotiable instrument is presumed to know that it will be dishonored if either of the following occurs:

"(1) The drawer had no account with the drawee at the time of issue or the stated date, whichever is later;

"(2) The check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor."

{¶ 39} The term "with purpose to defraud" in R.C. 2913.11(A) is defined to mean, "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B).

{¶ 40} The detriment needed to show a purpose to defraud in issuing a check which the drawer knows will be dishonored need not be limited to conventional situations in which property or cash is the immediate object of the fraud; the detriment to the payee sufficient to support an intent to defraud can include situations where a check is tendered with the purpose of inducing the temporary belief that a shortage has been paid, thus delaying potential collection processes or concealing shortages in other respects. *State v. Doane* (1990), 69 Ohio App.3d 638, 591 N.E.2d 735, jurisdictional motion overruled (1991), 58 Ohio St.3d 701, 569 N.E.2d 504. Appellant's tender of worthless checks to First Merit, even where drawn on an account which the bank would soon ascertain to be unfunded, shows the same purpose of delay and confusion; in fact, no other motive for appellant's actions can be discerned. The state presented sufficient evidence of purpose to defraud, and appellant's third assignment of error is accordingly overruled.

{¶ 41} Appellant's fourth assignment of error asserts that the trial court's verdict finding him guilty on Count One of the indictment, involving a check written to pay appellant's Discover Card bill for $3,416.93, is not supported by sufficient evidence because this check was in fact not dishonored by Firstar, even though it was later determined that insufficient funds were present in the account to cover the check. Since R.C. 2913.11(A) requires that the check be negotiated "knowing that it *will be* dishonored" (emphasis added), and the only evidence in the case established that the check had not been dishonored, but merely contributed to the overdraft, we agree with appellant that one of the essential elements of passing a bad check was not established by the prosecution in the present case. While clearly appellant might have been subject to being charged with another form of theft offense against the bank for this particular conduct, it did not constitute passing a bad check, because the payee was able to successfully negotiate the check without dishonor. There was therefore insufficient evidence to convict appellant on Count One of the indictment, and appellant's fourth assignment of error is sustained. As our reversal is based on insufficient evidence, appellant shall not be retried on this count of the indictment upon remand.

{¶ 42} In summary, appellant's second and fourth assignments of error are sustained, and appellant's first and third assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is reversed, and the matter is remanded for further proceedings in accordance with this opinion.

Judgment reversed
and cause remanded.

Bowman and Klatt, JJ., concur.