OPINION
{¶ 1} Appellant, K.B., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, finding him delinquent for conduct that would constitute the crime of rape if committed by an adult. For the reasons that follow, we reverse the juvenile court's decision.
 {¶ 2} In September 2005, the state charged appellant by complaint with one count of delinquency. The complaint alleged that appellant engaged in conduct that would constitute *Page 2 
rape in violation of R.C. 2907.02, a first-degree felony, if committed by an adult.
 {¶ 3} Appellant entered a denial to the delinquency count. After an adjudicatory hearing in February 2006, the juvenile court found appellant delinquent as alleged in the complaint. In March 2006, the court denied appellant's motion to reconsider its decision.
 {¶ 4} After a dispositional hearing in March 2006, the court ordered appellant to be committed to the Ohio Department of Youth Services for a minimum period of 36 months and a maximum period not exceeding his twenty-first birthday. However, the court placed appellant on probation and suspended the commitment, provided that appellant complied with court orders and probation rules. As a term of probation, the court required appellant to be placed in the Butler County Regional Rehabilitation Center and fully participate in programs there as directed by the center's staff. The court also classified appellant as a juvenile offender registrant.
 {¶ 5} Appellant now appeals the juvenile court's decision finding him delinquent, assigning three errors.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED IN CONSIDERING THAT [KB] DID NOT TESTIFY IN HIS OWN DEFENSE, AND FURTHER ERRED IN CONSIDERING EVIDENCE OUTSIDE THE RECORD."
 {¶ 8} Appellant makes two distinct arguments in this assignment of error. First, appellant argues that the juvenile court violated hisFifth Amendment privilege against self-incrimination by considering his failure to testify. Second, appellant argues that the court erred in considering evidence outside the record in making its decision. Specifically, appellant refers to the trial judge's statements about consulting his wife on matters of feminine hygiene.
 {¶ 9} "Even though they are labeled `civil,' juvenile delinquency proceedings feature *Page 3 
inherently criminal aspects that cannot be ignored." In re D.S.,111 Ohio St.3d 361, 2006-Ohio-5851, ¶ 17. Accordingly, constitutional safeguards, including Fifth Amendment protection, apply to juvenile delinquency proceedings. Id., citing In re Anderson, 92 Ohio St.3d 63,66, 2001-Ohio-131.
 {¶ 10} The Fifth Amendment to the United States Constitution, applicable to the states via the Fourteenth Amendment, provides persons with a privilege against compelled self-incrimination. In Griffin v.California (1965), 380 U.S. 609, 615, 85 S.Ct. 1229, the United States Supreme Court held that the privilege prevented a prosecutor from commenting on a criminal defendant's failure to testify and a judge from instructing a jury that a criminal defendant's silence is evidence of guilt. According to the court, such comments or instructions would amount to a penalty against the defendant for exercising a constitutional privilege. Id. at 614. Ohio courts have appliedGriffin, stating that neither a prosecutor nor a judge may comment on a criminal defendant's failure to testify. See, e.g., Akron v.Thomas, Summit App. No. 21504, 2003-Ohio-4784, ¶ 12; State v.Fields (1973), 35 Ohio App.2d 140, 145.
 {¶ 11} Consistent with the above principle, a trial judge, sitting as a trier of fact, may not consider a criminal defendant's failure to testify as evidence of the defendant's guilt. State v. Buckland (Feb. 9, 1987), Holmes App. No. CA-366, 1987 WL 7170, *2; United States v.Temple (C.A.4 1965), 349 F.2d 116, 118. However, unless it affirmatively appears to the contrary, an appellate court must presume that the trial judge considered only relevant, material, and competent evidence in arriving at its judgment. State v. Post (1987), 32 Ohio St.3d 380, 384.
 {¶ 12} According to the complaint, appellant, a 17-year-old male, engaged in sexual conduct with a 17-year-old female by purposely compelling submission via force or threat of force. The complaint alleged that appellant vaginally penetrated the victim without her *Page 4 
consent, and that when the victim told him to stop, he continued in a more forceful and aggressive manner. The incident took place during a teenage gathering at the home of the victim's parents, who were not there at the time.
 {¶ 13} The state presented 11 witnesses at trial including the victim, seven other teenagers who were present at the gathering, a DNA analyst at the Ohio Bureau of Criminal Investigation, a West Chester police detective, and a nurse who examined the victim. Appellant presented two witnesses at trial: a West Chester police officer and a doctor who analyzed DNA evidence. Appellant did not testify.
 {¶ 14} After counsel for the state and appellant made closing arguments, the juvenile court judge began a long discussion of the evidence at the conclusion of which he announced his decision finding appellant delinquent. The court began its discussion as follows:
 {¶ 15} "I think I'm ready to make a decision at this point. I have some comments, I guess. A trial like this is kinda like a roller coaster, up and down. Listening to evidence and thinking this way and this way and this way and this way until it's finally done and this one stopped kind of abruptly. You always look forward to hearing the rest of the story."
 {¶ 16} Approximately one month later, the court held a dispositional hearing. Prior to making its dispositional decision, the court denied appellant's motion to reconsider the delinquency decision. In denying that motion, the court again engaged in a lengthy discussion of the evidence and the reasoning behind the court's delinquency decision. During that discussion, the court stated as follows:
 {¶ 17} "And I guess the biggest let down I had because I anxiously awaited, and I think any jury or anybody would anxiously await what [appellant] has to say. [Appellant] didn't want to speak at the trial. [Appellant] spoke before the trial. We had testimony regarding his actions and his words. When he came out of there he was distraught. He's out in the back . *Page 5 
they've got him back in the back deck with his head in his hands and he's saying something to the effect I ruined her, I ruined myself and I'm not going to be able to play soccer."
 {¶ 18} Further, the juvenile court stated as follows:
 {¶ 19} "[F]or whatever reason, he didn't speak . . . and of course, I'm not supposed to take adverse . . . you know, except he spoke. He spoke a number of times in this case through other people, undisputed. But he never, never gave his own story. Yeah, now he can give his own story. My own story is it was consensual and I didn't do it and blah, blah, blah this is the way it happened. No, he never got on the stand and that was critical. It's a trial tactic, whatever."
 {¶ 20} Viewed together, we find that the above statements by the juvenile court indicate a violation of appellant's Fifth Amendment privilege against self-incrimination. The court made multiple, specific comments concerning appellant's failure to testify. As the state asserts, the court did discuss the evidence presented at trial. However, in the court's words, appellant's failure to testify was "critical." The court's statements strongly suggest that it considered appellant's silence in reaching its delinquency decision. As previously stated, we must presume that the juvenile court considered only relevant, material, and competent evidence unless there is evidence in the record to the contrary. We find that the statements made by the juvenile court were evidence in the record to the contrary.
 {¶ 21} We now consider whether the juvenile court's error was structural and therefore not subject to a harmless error analysis. "A structural error is a constitutional defect that * * * affects the framework within which the trial proceeds, rather than simply being an error in the trial process itself." State v. Fields, Butler App. No. CA2005-03-067, 2005-Ohio-6270, ¶ 27, citing State v. Perry,101 Ohio St.3d 118, 2004-Ohio-297. Structural errors permeate the entire conduct of the trial from beginning to end so that the trial cannot reliably serve its *Page 6 
function as a vehicle for the determination of guilt or innocence.Arizona v. Fulminante (1991), 499 U.S. 279, 309-310, 111 S.Ct. 1246. Courts have recognized structural errors in the following circumstances: total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of the defendant's race, denial of the right of self-representation, denial of the right to a public trial, and the giving of an erroneous reasonable doubt instruction to the jury. See Fields at ¶ 27, citing Johnson v.United States (1997), 520 U.S. 461, 468-469, 117 S.Ct. 1544.
 {¶ 22} We find that the juvenile court's error regarding appellant's privilege against self-incrimination was structural. The juvenile court's error was constitutional error that affected the framework within which the adjudicatory hearing proceeded. The juvenile court's repeated statements regarding appellant's silence and the court's view of appellant's failure to testify as "critical" strongly suggest a shift in the burden of proof from the state to appellant, requiring appellant to explain his conduct. Such a shift in the burden of proof fundamentally impacts how the trier of fact makes its ultimate decision. Other courts have similarly found structural error where the error affects the standard of proof to be employed by the trier of fact. SeeSullivan v. Louisiana (1993), 508 U.S. 275, 279-280, 113 S.Ct. 2078
(jury instruction that misstated reasonable doubt guilt standard was structural error); State v. Cooper, Lawrence App. No. 06CA4,2007-Ohio-1186, ¶ 35 (faulty jury instruction omitting applicable burden of proof for self-defense was structural error).
 {¶ 23} The United States Supreme Court held in United States v.Hasting (1983), 461 U.S. 499, 509-510, 103 S.Ct. 1974, that an improper comment by a prosecutor regarding a defendant's failure to testify was subject to a harmless error analysis. This court has ruled similarly. See, e.g., State v. Farwell, Clermont App. No. CA2001-03-041, 2002-Ohio-1912, 2002 WL 649387, *10. However, unlike those cases, this case did not involve an isolated
comment by a prosecutor during closing argument. In this case, the judge, acting as the trier *Page 7 
of fact, made multiple, specific references to appellant's failure to testify, and indicated that appellant's silence was "critical." Under the narrow circumstances of this case, in which the record strongly suggests actual consideration by the trier of fact of an accused's silence, we find structural error requiring reversal.
 {¶ 24} We now address appellant's second argument regarding the juvenile court's consideration of matters outside the record. It is axiomatic that the trier of fact must only consider evidence in the record. In this case, the juvenile court was required to determine, based on the evidence presented at the adjudicatory hearing, whether the state proved delinquency beyond a reasonable doubt. See In reFortney, 162 Ohio App.3d 170, 2005-Ohio-3618, ¶ 19; R.C. 2151.35(A); Juv.R. 29(E).
 {¶ 25} During the court's discussion of the evidence in ruling on appellant's motion for reconsideration, the court made the following comments regarding a tampon that was offered into evidence:
 {¶ 26} "The Court was not educated as to feminine hygiene. You can't expect me to guess this, guess that. What's the meaning of the blood on the bed? I got an idea now because I talked to my wife afterwards what the meaning of the blood on the bed was. But that doesn't make any difference because that wasn't in . . . in the record. I don't . . . wasn't educated. But it also supported why the . . . I believe why the tampon was probably in the bathroom. Of course she did probably use it before she went to bed because you don't have that much blood on the INAUDIBLE part of the period, or at least according to my wife. That's as much as I know about that stuff."
 {¶ 27} We find that the juvenile court judge improperly commented on matters outside the record regarding his wife. The state cites State v.Barnes, Franklin App. No. 04AP-1133, 2005-Ohio-3279, in support of its argument that the statements were inconsequential because the court had already made its delinquency determination. However, the juvenile *Page 8 
court had not yet ruled on appellant's motion to reconsider the delinquency determination. Further, the court made the statements during its discussion of the rationale for its initial delinquency determination. Under these circumstances, we find error. Because we have already found structural error, which requires reversal, we need not determine whether the court's comments about matters outside the record constituted harmless error.
 {¶ 28} Based on the foregoing analysis, we sustain appellant's first assignment of error. In appellant's remaining two assignments of error, he argues that the juvenile court's delinquency finding was against the manifest weight of the evidence, and that he received ineffective assistance of counsel. Due to our resolution of appellant's first assignment of error, we find appellant's second and third assignments of error to be moot. See App.R. 12(A)(1)(c).[1] Accordingly, we reverse the juvenile court's judgment finding appellant delinquent, and remand this case for a new adjudicatory hearing.
BRESSLER, P.J. and WALSH, J., concur.
[1] Appellant does not challenge the sufficiency of the evidence supporting the juvenile court's delinquency determination. If appellant had raised such an argument, this court would be obligated to address it because if the argument had merit, there would be a double jeopardy bar to retrial. See State v. Suber, 154 Ohio App.3d 681, 2003-Ohio-5210, ¶ 30, citing Tibbs v. Florida (1982), 457 U.S. 31, 42 102 S.Ct. 2211. There is no double jeopardy bar to retrial when a conviction is reversed as being against the manifest weight of the evidence. Id. at 47. Therefore, this court is not obligated to address appellant's manifest weight of the evidence assignment of error, rendered moot by this court's resolution of appellant's first assignment of error. *Page 1