[Cite as *State v. Adkins*, 2025-Ohio-2833.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                    :

      Plaintiff-Appellee,        :      Case No. 24CA3

      v.                         :

JOSEPH K. ADKINS,                 :      DECISION AND JUDGMENT ENTRY

      Defendant-Appellant.       :      **RELEASED: 08/05/2025**

                                 :

_____

APPEARANCES:

Gene Meadows, Jackson, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Philip Heald, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.
_____

Wilkin, J.

{¶1}   This is an appeal of an Ironton Municipal Court judgment entry from a bench trial in which Joseph K. Adkins ("Adkins") was found guilty of theft, a first-degree misdemeanor, and criminal damaging, a second-degree misdemeanor.  On appeal Adkins maintains that the trial court committed plain error while rendering its decision regarding Adkins' guilt by considering the fact Adkins did not testify.  After reviewing the parties' arguments, the record, and the applicable law, we find the judge's comments regarding Adkins' not testifying did not constitute plain error regarding the findings of guilt.  However, we find that the judgment entry of conviction does not indicate which offense survived merger.  For the reasons that follow, the entry of conviction is affirmed in part and reversed in part.  The sentence imposed is upheld, but the matter is remanded for the State to elect which offense survives merger.

BACKGROUND

**{¶2}** On July 12, 2023, a complaint was filed charging Adkins with theft, a first-degree misdemeanor in violation of R.C. 2913.02(A)(1), for taking a metal mobile worktable valued at $669 from the Buckeye Monument Company in Ironton.  The next day, Adkins was also charged with criminal damaging, a second-degree misdemeanor in violation of R.C. 2909.06(A)(1), for damaging a rock that was used in the cemetery monument business.

**{¶3}** On November 9, 2023, the matter proceeded to a bench trial.  At trial the State called Greg Klaiber ("Klaiber"), owner of Buckeye Monument and Bryan Jordan ("Jordan"), an Ironton Police Department patrolman.  Klaiber testified that on July 10, 2023, he noticed a worktable from the business was missing so he watched the security videos for the property.  The State entered these videos as exhibits and played them for the trial court.  The video evidence showed that in the early morning hours of July 10, 2023, a man (later identified as Adkins) approached a metal table that had a large rock sitting on it.  Adkins shoved the rock to the ground, then attempted to put the metal table in a car.  When the metal table would not fit, he used a dolly to push it down a paved alley behind the business.  Klaiber was able to obtain the license plate number, the make and model of the car and gave that information, as well as the security videos, to the police.

**{¶4}** Klaiber testified that the metal table was used in the business and that the rock weighed 350-400 pounds.  Klaiber said that, even though the metal table was outside the fence, other items of value that were also used in the business were located beside it.  The rock was business property and became damaged when it was pushed

off the table, which rendered it unusable.  Klaiber acknowledged that his business had

posted Facebook messages that persons could come to the business and pick up

discarded pallets.  The surveillance video showed the pallets were located outside the

fence, but some distance away from the table.  Klaiber specifically testified that Adkins

had not called him prior to July 10 to ask permission to take the table.  Klaiber also

testified that he was certain no one else at the company had given Adkins permission to

take the table because the metal table was something that employees at Buckeye

Monument used to perform their work.  Klaiber was also adamant that Adkins called

Buckeye Monument several times *after* the incident to claim it was all a "big

misunderstanding."

{¶5}    Upon receiving the information from Klaiber, Jordan was able to identify

Adkins as the person who owned the car used in the incident.  Jordan then went to

Adkins' residence, where Adkins retrieved the metal worktable.  Adkins told Jordan he

believed he had permission to take the worktable because that is where Adkins goes to

pick up discarded pallets from the Buckeye Monument business.  Thus, both State

witnesses testified that Adkins maintained he believed that he had permission to take

the table.

{¶6}    The State also introduced Jordan's bodycam video showing his interaction

with Adkins.  Adkins did not immediately give back the table when the police inquired

about it.  When the police asked where the table from Buckeye Monument was, Adkins

said "The table?  What do you mean, like a table?"  He also said, "I called there and

asked if I could take it," and said he had talked to the "lady at the front desk," but did not

know her name.  "I've come there several times."  He also stated that "my grandparents

live over by there and I've been going by there for years--[Buckeye Monument] leave[s] stuff out back, like pallets and stuff, but I've talked to the guys for sure . . . I did ask 'em." "The [table's] been there for months, and I even asked the guy about it." Adkins did not testify at trial.

{¶7}    During closing arguments, the defense specifically argued that there was no question that Adkins took the table, the issue was whether Adkins had the requisite intent. Adkins' trial counsel argued that both witnesses said Adkins told them after the fact he believed the table was free, in the same manner as the pallets. Adkins' trial counsel also pointed out that the Adkins gave the table to police when they asked him about it at his residence. Defense counsel questioned whether the rock Adkins pushed off the table had actually been damaged at the time, or if the rock had been broken later.

{¶8}    At the close of evidence, the judge issued a decision finding Adkins guilty of both charges. The judge stated that it was somewhat irrelevant whether the metal table was returned that same day. The judge also went on to explain, as follows:

> [It] can be easily deduced from observation, a clear observation, that this item, this item that was standing there on the table . . . was something that could possibly be used in the business of Buckeye Monument. It certainly wasn't there for some kind of decoration, or this wasn't a house that was in the backyard, it appeared from the videos, as well as the pictures, that have been introduced into evidence that there were other items, that were, probably items that could be easily deduced that they were used by Mr. Klaiber's business, either to make headstones, or whatever, or to make these other stones that he testified to or used to mark people's property line, or to be decoration at their home, after doing some work on them. And for somebody to come along and just think I'll knock that rock off that pedestal, or that table, and take that table, it doesn't make any rational sense, . . . [that] that would be something that a law-abiding citizen would think is ok with the law or with the person who apparently owned the property. I can't imagine going anywhere near a business such as Mr. Klabier's and doing what is alleged to have been done . . . and thinking that was ok. I also don't

believe there was an effort made prior to . . . July 10, 2023, that Mr. Adkins, or anybody else in his family, or household, had gotten prior approval, to either knock that rock off the table, and take the table, or anything close to that. I don't think that's logical and Mr. Adkins not taking the stand under oath and saying that he has done that makes me further not believe that that was done. And I do believe Mr. Klabier in the sense that he testified under oath that nobody had ever made that call on that day or day before to determine that that item was available for possession.

The judge also made a finding that the State showed that the rock had been damaged by Adkins pushing it off the table.

{¶9} At the sentencing hearing, Adkins spoke and said that he never had an intent to steal, that he believed he had permission, and that he "went out of [his] way to make sure it was ok." Adkins also said at sentencing he had "been there 40-50 times in the previous three months" and disputed the testimony that he had never talked to Klaiber. In response to Adkins claim that Klaiber's testimony was not accurate, the judge commented, "[y]ou had [the] opportunity to testify at trial and you chose not to." The judge then proceeded to sentence Adkins.

{¶10} The issue of merger for the two offenses was not addressed at the sentencing hearing, even though the entry dated January 4, 2024, indicates that the theft and criminal damaging offenses merged for purposes of sentencing. However, the entry does not indicate which sentence survived the merger. The trial court issued a suspended sentence, conditioned on Adkins performing 5 days of community service, and Adkins staying away from Buckeye Monument, except for legitimate business purposes. It is from this decision that Adkins appeals.

ASSIGNMENT OF ERROR

I.     THE DEFENDANT-APPELLANT'S RIGHT AGAINST SELF-INCRIMINATION WAS VIOLATED BY THE TRIAL COURT'S COMMENT THAT THE DEFENDANT-APPELLANT DID NOT TESTIFY IN

VIOLATION OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

I.        Final Appealable Order/Merger and Election by the State

**{¶11}** Before we proceed to Adkins' assignment of error, we must first address an issue sua sponte involving an error in the judgment entry of conviction in this case. While the judgment entry clearly sets forth the findings of guilt for the charges in the complaints and also states that those offenses merge for purposes of sentencing, the entry of conviction omits the particular section of the Revised Code and level of offense that Adkins was convicted of and also fails to indicate which offense survived merger for the purposes of sentencing.

**{¶12}** First, we observe that the entry in this case was a final, appealable order because it meets the substantive requirements of Crim.R. 32(C). *See State v. Figueroa*, 2020-Ohio-1328, ¶ 9 (11th Dist.) citing *State v. Lester,* 2011-Ohio-5204, ¶ 11. "These substantive requirements are '(1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk.' " *Id.* quoting *Lester* at ¶ 14, modifying *State v. Baker,* 2008-Ohio-3330. The sentencing entry in the instant case indicates the *fact* of conviction for both charges and the merger of the two. Instead, it does not indicate the *manner* of conviction. *See Figueroa* at ¶ 9-11. In other words, while it indicates the offenses merged, it does not indicate which offense for which the trial court imposed sentence.

**{¶13}** A trial court cannot impose a separate sentence for each offense when it concludes that an accused has been found guilty of allied offenses of similar import. *Figueroa* at ¶ 51, citing *State v. Williams*, 2016-Ohio-7658, ¶ 28. "Rather, the court has

a mandatory duty to merge the allied offenses by imposing a single sentence, and the imposition of separate sentences for those offenses . . . is contrary to law because of the mandate of R.C. 2941.25(A)." *Id.* quoting *Williams* at ¶ 28.  The State then chooses which offense it elects the court to pursue at sentencing.  *Id.* citing *State v. Whitfield*, 2010-Ohio-2, ¶ 20; *see also State v. Cruz-Altunar*, 2019-Ohio-2298, ¶ 26 (10th Dist.) (where Tenth District construed *Whitfield*'s discussion of legislative intent to be the state has the right to elect which offense survives merger).

{¶14}  In the instant case, the findings of guilt for both offenses are final, appealable orders.  The trial court correctly sentenced Adkins to one offense after the merger.  However, the trial court did not indicate which conviction survived merger.  Therefore, this case must be remanded to the trial court in order for the State to elect which allied offense it wishes to survive merger for purposes of the imposed sentence. *See Figueroa* at ¶ 54; *State v. Hersey,* 2022-Ohio-4058, ¶¶12-13 (11th Dist.); *State v. Louis*, 2017-Ohio-8666, ¶ 25 (2d Dist.).

## II.      Assignment of Error

{¶15}  In his sole assignment of error, Adkins claims the trial court committed plain error when rendering its decision by commenting or considering that Adkins did not testify during the trial.  The State responds that the trial court's statement was almost an aside, or an isolated comment in part of a longer explanation during the pronouncement of the verdict.  The State argues that regularity of the trial court proceedings must be presumed, and that the finding of guilt did not hinge upon Adkins' decision not to testify.  Further, the State asserts Adkins has failed to meet his burden of showing plain error.

A.  Law.

**{¶16}**  The Fifth Amendment to the United States Constitution guarantees that no person in any criminal case shall be compelled to be a witness against himself.  This amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment.  *State v. Gilcrease,* 2020-Ohio-487, ¶ 50 (8th Dist.), citing *Malloy v. Hogan,* 378 U.S. 1, 6 (1964).  The United States Supreme Court has held the privilege prevents a prosecutor from commenting on a criminal defendant's failure to testify and a judge from instructing a jury that a criminal defendant's silence is evidence of guilt.  *In re K.B.,* 2007-Ohio-1647, ¶ 10 (12th Dist.), citing *Griffin v. California*, 380 U.S. 609, 615 (1965); *see also*, *City of Akron v. Thomas,* 2003-Ohio-4784, ¶ 12 (9th Dist.).  Consistent with this principle, Ohio courts have observed that "a trial judge, sitting as a trier of fact, may not consider a criminal defendant's failure to testify as evidence of the defendant's guilt."  *Id.* at ¶ 11, citing *State v. Buckland,* 1987 WL 7170 *2 (5th Dist. Feb. 9, 1987); *State v. Jones,* 2023-Ohio-3862, fn. 1 (1st Dist.); *City of Cleveland v. Mincy,* 2018-Ohio-3565, ¶ 36 (8th Dist.).

**{¶17}**  Even so, " '[i]n a bench trial, the trial court is presumed to have considered only admissible evidence unless the record indicates otherwise.' "  *City of Cleveland v. Mincy,* 2018-Ohio-3565, ¶ 37 (8th Dist.), quoting *State v. Reddy*, 2010-Ohio-5759, ¶ 58 (8th Dist.).  Thus, "in a bench trial, the court is presumed to know and follow the law unless the record affirmatively demonstrates to the contrary."  *State v. Gilcrease,* 2020-Ohio-487, ¶ 52 (8th Dist.), citing *State v. Killbane*, 2019-Ohio-863, ¶ 15 (8th Dist.).  The United States Supreme Court has stated:

> "[i]n bench trials, judges routinely hear inadmissible evidence that they are
> presumed to ignore when making decisions.  It is equally routine for them

to instruct juries that no adverse inference may be drawn from a defendant's failure to testify; surely we must presume that they follow their own instructions when they are acting as factfinders."

*Id.*, quoting *Harris v. Rivera,* 454 U.S. 339, 346 (1981).  Appellate courts have still found error in instances during a bench trial where the trial court repeatedly referred to the accused's choosing not to testify, especially when the court's statements "strongly suggest[ed] a shift in the burden of proof" from the State to the accused.  *See, e.g., Cleveland v. Mincy*, 2018-Ohio-3565, ¶ 42 (8th Dist.).  "However, unless it affirmatively appears to the contrary, an appellate court must presume that the trial judge considered only relevant, material, and competent evidence in arriving at its judgment."  *In re K.B.,* 2007-Ohio-1647, ¶ 11 (12th Dist.), citing *State v. Post*, 32 Ohio St.3d 380, 384 (1987).

{¶18}  Courts have held that a violation of an accused's right to remain silent in cases where the record strongly suggests actual consideration by the trier of fact of the accused's silence constitutes structural error.  *See, e.g., City of Cleveland v. Mincy,* 2018-Ohio-3565, ¶ 35-42 (8th Dist.); *In re KB,* 2007-Ohio-1647, ¶ 23 (12th Dist.) ("Under the narrow circumstances of this case, in which the record strongly suggests actual consideration by the trier of fact of an accused's silence, we find structural error requiring reversal.").

{¶19}  A structural error " '[a]ffects the framework within which the trial proceeds,' rather than being 'simply an error in the process itself.' "  *State v. Tabor,* 2017-Ohio-8656, ¶ 15 (4th Dist.), citing *Weaver v. Massachusetts,* 582 U.S. 286, 295 (2017), quoting *Arizona v. Fulminante,* 499 U.S. 279, 310 (1991).  "[A] structural error that a defendant objects to at trial ordinarily mandates " 'automatic reversal,' " "regardless of the error's 'actual effect on the outcome.' "  *Id., citing Weaver* at 298.  "The structural-

error-automatic-reversal rule exists 'to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial.' " *Id., citing Weaver* at 295. Structural error is recognized when "the errors permeate the 'entire conduct of the trial from beginning to end,' so that the trial court cannot 'reliably serve its function as a vehicle for determination of guilt or innocence.' " *State v. Jones,* 2024-Ohio-2959, ¶ 67 (3d Dist.), quoting *State v. Fields,* 2005-Ohio-6270, ¶ 27 (12th Dist.), quoting *Arizona v. Fulminante* at 309-310. Even so, an accused who does not object at trial normally would not be entitled to an automatic reversal according to structural error. Appellate courts' holdings should " 'foster rather than thwart judicial economy by providing incentives . . . for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected.' " *State v. Tabor,* 2017-Ohio-8656, ¶ 19, (4th Dist.) quoting *State v. Perry*, 2004-Ohio-297, ¶ 23. In instances where the accused did not object to a trial judge commenting on a defendant's silence, appellate courts have applied a plain error analysis if the error did not repeatedly occur throughout the trial. *See, e.g., State v. Rutherford,* 2009-Ohio-1162, (12th Dist.), ¶ 14-21.

{¶20} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Andrews*, 2024-Ohio-5023 ¶ 51 (4th Dist.), citing *State v. Rohrbaugh*, 2010-Ohio-3286, ¶ 6. "For the plain error doctrine to apply, the party claiming error must establish (1) that ' "an error, i.e., a deviation from a legal rule" ' occurred, (2) that the error was ' "an 'obvious' defect in the trial proceedings," ' and (3) that this obvious error affected

substantial rights, i.e., the error ' "must have affected the outcome of the trial." ' " *Id.*, quoting *State v. Young*, 2018-Ohio-4990, ¶ 4 (4th Dist.), quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 22, "Thus, for error to be plain, the error must be ' "clearly outcome-determinative." ' " *Id.* citing *State v. Porter*, 2012-Ohio-1526, ¶ 19 (4th Dist.), quoting State *v. Perez*, 2009-Ohio-6179, ¶ 181.

### B.  Analysis

**{¶21}**  As a threshold matter, we must determine whether to apply a structural error or plain error analysis.  We observe that Adkins did not object to the trial court's comments in the trial court.  Further, on appeal, Adkins cites only one instance wherein the trial court, while announcing its decision, referenced Adkins not taking the witness stand.  Therefore, rather than showing how the trial court's remark "permeated" the entire trial, which in some very narrow circumstances could warrant a structural error analysis, we find a plain error analysis appropriate.  Additionally, in his brief, Adkins argues that the trial judge's comments constituted plain, and not structural, error.  We therefore apply a plain-error analysis.

**{¶22}**  In the instant case, the defense conceded much of the State's evidence during closing argument.  The defense acknowledged, during closing argument, that Adkins had taken the table, but claimed he had permission from someone at the company to take it.  However, the evidence before the court was from Klaiber, the owner of the company, who testified he had never given permission, and also that it was highly unlikely that another employee had given Adkins permission because of the value of the worktable to the business' performance.  Further, the fact that several other items sitting beside the table clearly were still being used in the business, the table was in a

different area than the "free" pallets, and the fact Adkins had to remove a 350-400 pound rock from the table's surface show that the table had not been discarded by the business. The State therefore showed Adkins' "knowing" intent to take the table unlawfully.

{¶23} The only evidence of the defense contentions that Adkins had permission to take the table came from Jordan's body cam video because the defense called no witnesses, nor did Adkins testify at trial. The defense therefore relied on the bodycam evidence and closing argument to refute the State's case. On the bodycam, Adkins told police he believed he had permission to take the table. However, also during his statements to police on the bodycam were the somewhat confusing and dubious statements Adkins made when police approached him about the theft. Hence, rather than base its decision on Adkins' choosing to remain silent, the trial court simply emphasized it was deciding the case on the evidence presented to the court. The trial court observed that the defense argument was not logical based on that evidence. In other words, defense trial counsel in essence asked the court to consider closing argument and the statements Adkins made to Jordan to support its defense, but the court found the statements to be illogical. Further, Klaiber, who testified under oath, adamantly swore no one gave Adkins permission to take the table, and also that Adkins called the business *after* the offense.

{¶24} Successful appellate challenges alleging the trial court, sitting as trier of fact, improperly commented on the defendant's choice not to testify differ from the case at bar. For example, *In re K.B.,* during a juvenile delinquency hearing in which the issue involved the consent of the alleged victim, the trial court "made multiple, specific

references to appellant's failure to testify, and indicated that appellant's silence was "critical" to its decision. 2007-Ohio-1647 (12th Dist.), ¶ 19-20. The Twelfth District reversed the delinquency ruling, finding structural error in the "narrow circumstances" because the trial court's decision resulted in "the record strongly suggest[ing] actual consideration by the trier of fact of an accused's silence." *Id.* at ¶ 23.

{¶25} Similarly, in *City of Cleveland v. Mincy,* a domestic violence case in which the defendant did not testify to his side of the story, the trial court commented that it was finding the defendant guilty, while at the same time making a number of comments about the accused's decision not to testify. 2018-Ohio-3565, ¶ 10 (8th Dist.). There, the Eighth District found that the context and repetition of the remarks regarding the defendant's choosing not to testify resulted in a "shift of the burden of proof to the defendant," requiring him to explain his conduct. *Id.* at ¶ 42.

{¶26} Unlike *K.B. or Mincy,* here the trial court made one isolated reference in response to the defendant's closing argument, which demonstrated that the trial court was simply emphasizing that it could only consider the evidence that was before the court, wherein the State proved all the elements of the offense. Therefore, unlike cases wherein the trial judge considered the defendant's failure to testify or explain the circumstances in rendering its decision, the trial judge in the instant case, simply emphasized he was limited to considering the actual evidence submitted in the case at hand – not closing argument. Further, here the only actual evidence of the defense position of the case came from Adkins' bodycam interview which the trial court found not "logical" or consistent with the other evidence presented.

**{¶27}** Even if the trial judge's comment was error, it did not "affect the outcome of the trial" in this instance.  Our conclusion may be different had these remarks been made to a jury, who could draw a conclusion adverse to the defendant's interest.  However, we are limited to a presumption that a trial judge considers only competent evidence in reaching his decision.  The only evidence before the court shows Adkins' guilt, including his intent to take the table.  Adkins has not demonstrated how the judge's comment resulted in a shifting of the burden of proof.  Adkins therefore has failed to show how the outcome of the trial would have been different, based on the evidence in the record.

## CONCLUSION

**{¶28}** We therefore overrule the sole assignment of error and uphold the findings of guilt in the within case.  Nevertheless, we remand the judgment entry of conviction to the trial court for the State to elect which offense survives merger.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the IRONTON MUNICIPAL COURT to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J.:  Concurs in Judgment and Opinion.
Abele, J.: Concurs in Judgment Only.

For the Court,


BY: _____
Kristy S. Wilkin, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**