OPINION
{¶ 1} Defendant-appellant, Heather R. Carmen, appeals her conviction in the Clinton County Court of Common Pleas for the offense of rape. We affirm.
 {¶ 2} In 2003, appellant and her husband, Edward Carmen, moved into her parent's home located in Sabina, Ohio. Appellant has two sons from previous relationships, J.S. and S.P. Both boys lived with appellant and Edward. Edward has two daughters from his previous marriage, M.C. and D.C. Both girls reside with their mother and have visitation with *Page 2 
Edward every other weekend. Around approximately February 2006, Edward's daughter M.C. wanted a cell phone. She discussed the matter with her father and appellant and, thereafter, the couple purchased a phone for her. Around February 14, 2006, Edward and appellant were advised by his ex-wife that M.C. was abusing the phone by text messaging and overuse, and requested that Edward remove the phone from M.C.'s possession. That evening Edward and appellant drove to his ex-wife's home to retrieve the phone. M.C. became very upset, yelling at her parents and engaging in a physical altercation with appellant. Following the altercation, M.C.'s mother proceeded to ground her from her school's upcoming Valentine's Day dance. M.C. went to her room and wrote a letter to her mother, alleging that Edward had given her the phone in exchange for engaging in sexual behavior with him. After reading the letter, M.C.'s mother contacted the Children's Medical Center.
 {¶ 3} M.C. went to the medical center on February 17, 2006 for a forensic interview and physical examination. During the interview, M.C. relayed that she had been sexually assaulted by Edward at appellant's request and in the presence of appellant two weeks prior. The medical evaluation was inconclusive and showed no physical signs of assault or forced sexual entry. Pursuant to M.C.'s disclosure, Fayette County Children's Services was notified and made a referral to Clinton County Children's Services. Clinton County social workers contacted appellant's children at school and interviewed them on or about February 23, 2006. During the interview, the boys denied any sexual activity involving the couple.
 {¶ 4} Around June 18, 2006, appellant's sons were visiting S.P.'s natural father during his allotted parenting time. J.S. disclosed that appellant and Edward had engaged in sexual activity with both him and his brother. The disclosure was reported to the Warren County Sheriff's Office, who contacted the Sabina Police Department. The boys went to the police department, where they were interviewed by a caseworker. The boys made *Page 3 
statements alleging that Edward and appellant engaged in sexual activity with them. Appellant and Edward were interviewed and advised that the agency was going to remove the children from the home. As a result, appellant and Edward agreed to relinquish their home so that the children could remain safely placed with appellant's parents.
 {¶ 5} Appellant was charged with five counts of rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree.[1] Edward was charged with four counts of rape. The cases were consolidated and a single trial was held involving both defendants. Following a jury trial, appellant and Edward were each found guilty of one count of rape.[2]
Appellant was sentenced to ten years in prison and classified as a sexually-oriented offender. Appellant timely appeals, raising six assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "IT WAS PREJUDICIAL ERROR TO ALLOW THE TESTIMONY OF THE APPELLANT'S PAST SEXUAL HISTORY OR HER SEXUAL ORIENTATION."
 {¶ 8} In her first assignment of error, appellant directs this court to review testimony regarding her past sexual history and sexual orientation. Appellant argues that allowing the prosecutor to question appellant about past sexual behavior resulted in prejudicial error. Appellant argues the trial court erred by failing to enforce Ohio's rape shield law.
 {¶ 9} Ohio's rape shield law provides that "[e]vidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be adm itted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under *Page 4 
section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." R.C. 2907.02(D).
 {¶ 10} It is within the sound discretion of a trial court to determine the relevancy of evidence and to apply R.C. 2907.02(D) to best meet the purpose of the statute. State v. Hart (1996), 112 Ohio App.3d 327, 331.
 {¶ 11} During cross-examination of appellant, the prosecution inquired into appellant's sexual orientation. The prosecution asked if appellant was bisexual. Appellant admitted that she was. The prosecution asked whether appellant and Edward went to "swinger's clubs" and engaged in group sex. Appellant replied that they went to a swinger's club one time and that they did not engage in group sex, but that she had engaged in sex with other partners before. Appellant acknowledged that she is very open about her sexuality between herself and Edward and other adults. The prosecution inquired whether appellant engaged in bondage, owned any sex toys, or showed pornography to her children; which she denied. Further, the prosecution also asked about one of appellant's tattoos. Specifically, the prosecution asked:
 {¶ 12} "Q: Well, I mean, you've got a tattoo, don't you?
 {¶ 13} "A: Yes, I have tattoos.
 {¶ 14} "Q: And it says, `Pudge's slave'?
 {¶ 15} "A: Yeah.
 {¶ 16} "Q: And it's a picture that has you and a donkey and a whip or what?
 {¶ 17} "A: No. (laughs), it's a heart and flowers.
 {¶ 18} "Q: And, it just says, `Pudge's Slave'?
 {¶ 19} "A: Yeah, says `Pudge's Slave' and it's a purple rose and the stem comes down and have my children's names on my other arm." *Page 5 
 {¶ 20} The prosecution thereafter inquired into the meaning of the tattoo, asking whether it was sexual in nature. Appellant denied any sexual connotation. The prosecution then inquired whether appellant had a clitoris piercing, which she denied.
 {¶ 21} Following the question regarding the piercing, appellant's counsel entered an objection. The trial court sustained the objection and instructed the jury to strike the reference to any piercing. However, no motion for a mistrial or motion to strike was made relating to the other sex-related questions and testimony. Due to this omission, our review is limited to plain error. Appellant argues the improper line of questioning by the prosecutor prejudicially characterized her as a sexual deviant.[3]
 {¶ 22} Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68. An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. State v. Baldev, Butler App. No. CA2004-05-106,2005-Ohio-2369, ¶ 12; State v. Krull, 154 Ohio App.3d 219,2003-Ohio-4611, ¶ 38. "Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Baldev at ¶ 12, citing State v. Long (1978), 53 Ohio St.2d 91, 95.
 {¶ 23} After a review of the record, we find no plain error. On direct examination, appellant was questioned by her trial counsel and testified about her sons' access and knowledge of sex, pornography and sex toys. Appellant was also asked about her husband's sexual orientation and whether she owned a dildo. Appellant testified that she did not own a dildo and that Edward was not gay. The prosecutor's questions relating to appellant's sexual *Page 6 
practices were invited by the direct examination of appellant.
 {¶ 24} Appellant's first assignment of error is overruled.
 {¶ 25} Assignment of Error No. 2:
 {¶ 26} "THE APPELLANT WAS NOT GRANTED A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HER CONSTITUTIONAL RIGHTS."
 {¶ 27} In her second assignment of error, appellant claims ineffective assistance of counsel. Appellant argues that her trial counsel committed multiple mistakes; including failing to object or request a motion to strike following the questions regarding her sexual history discussed in the previous assignment of error. Appellant also argues that her counsel, referring to those issues during closing argument, prejudiced her by bringing the testimony "to the forefront of the jury's mind." Additionally, appellant alleges further mistakes by her trial counsel. Appellant claims her counsel erred by failing to object to the questioning regarding appellant's past drug use, failing to object to questions that had been asked and answered, failing to object to the testimony of Kathy Runnels, failing to renew her Crim. R. 29 motion at the close of appellant's case, failing to join her co-defendant's motion for a mistrial, failing to request or file discovery, and failing to subpoena or call any witnesses on her behalf.
 {¶ 28} To establish ineffective assistance, appellant must show that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. Strickland v. Washington
(1984), 466 U.S. 668, 687-88, 693, 104 S.Ct. 2052. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. State v. Bradley (1989),42 Ohio St.3d 136, 142, citing Strickland at 689.
Prejudice exists where there is a reasonable probability that, but for counsel's errors, the *Page 7 
result of the trial would have been different. Strickland at 694. In order to establish ineffective assistance, appellant must establish that trial counsel's performance was deficient; and that the deficient performance prejudiced the defense to the point of depriving appellant of a fair trial. Id.
 {¶ 29} Appellant submits a laundry list of potential errors committed by trial counsel. As we discussed in the previous assignment of error, the sexual questioning by the prosecution was invited by appellant's direct testimony. Accordingly, counsel's failure to object to the questioning, and appellant's resulting testimony, did not prejudice appellant. As to the remaining errors, appellant further fails to demonstrate the effect of the alleged omissions. First, appellant fails to show that the renewed Crim. R. 29 motion would have been successful if requested by her trial counsel. Second, appellant claims that counsel erred by failing to subpoena or call witnesses, yet appellant does not identify any potential witnesses or testimony. Finally, appellant claims that her trial counsel was insufficient for not objecting to questions about her drug use, the testimony of Kathy Runnels, or joining her co-defendant's motion for mistrial; but appellant fails to show that she was prejudiced by these decisions or that the motion would have been successful.
 {¶ 30} Appellant's second assignment of error is overruled.
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S CRIM.R. 29 MOTION TO DISMISS."
 {¶ 33} Assignment of Error No. 4:
 {¶ 34} "THE APPELLANT'S CONVICTION WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE."
 {¶ 35} Due to the similarity of appellant's argument, we will address appellant's third
and fourth assignments of error together. At the close of the state's case, appellant's counsel *Page 8 
moved for acquittal based upon Crim. R. 29, which was denied by the trial court. In her third assignment of error, appellant argues that the trial court erred by failing to grant the Crim. R. 29 motion. In her fourth assignment of error, appellant claims that insufficient evidence was presented to support the rape conviction.
 {¶ 36} Under both assignments of error, appellant presents the same argument. Further, we address these assignments of error together because our review of a court's denial of a Crim. R. 29 motion for acquittal is governed by the same standard as that used for determining whether a verdict is supported by sufficient evidence. State v.Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 14.
 {¶ 37} Appellant argues in both assignments of error that the state failed to establish the time frame the incident occurred as alleged in the indictment. Appellant also attacks the credibility of the victim's testimony, arguing that the conviction is not supported by any reliable evidence. However, evaluation of witness credibility is not proper for the review of evidentiary sufficiency. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79, citing State v. Waddy (1992),63 Ohio St.3d 424. In reviewing the sufficiency of the evidence underlying a criminal conviction, a reviewing court will not substitute its evaluation of witness credibility for that of the jury. State v. Williams,73 Ohio St.3d 153, 165, 1996-Ohio-275. As a result, the credibility argument raised by appellant is improper when reviewing a case for sufficiency or the denial of a Crim. R. 29 motion. We will address the issue of credibility below under appellant's fifth assignment of error, relating to the manifest weight of the evidence.
 {¶ 38} Accordingly, the lone argument for review is whether sufficient evidence was presented to establish the time frame the incident occurred. "An appellate court's function when reviewing the sufficiency of the evidence to support a crim inal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would *Page 9 
convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks ( 1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 39} The crime of "rape" as defined in R.C. 2907.02(A)(1)(b) provides, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 40} The indictment in the case at bar alleges that the illegal sexual conduct occurred "on or about the period of January 1, 2006 through and including February 28, 2006."
 {¶ 41} After a review of the record, sufficient evidence was presented to establish that the rape occurred during the alleged time period. At trial, the victim testified that the conduct occurred after he turned ten years old on January 6, 2006, while he was in the third grade. This timeframe was supported by S.P.'s testimony. S.P. affirmed in his testimony that the incidents he was testifying about occurred around January 2006.
 {¶ 42} Appellant's third and fourth assignments of error are overruled.
 {¶ 43} Assignment of Error No. 5:
 {¶ 44} "THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 45} In her fifth assignment of error, appellant argues that her conviction was against the manifest weight of the evidence. In this assignment of error, appellant attacks the credibility of the victim. Appellant charges that the victim changed his story during his direct testimony and cross-examination and had difficulty committing to a time frame in which the *Page 10 
offense occurred. Appellant claims that the victim lied numerous times about the alleged offense and acknowledged to the jury that he fabricated the events. As a result, appellant argues the jury clearly lost its way.
 {¶ 46} While the test for sufficiency requires a determination as to whether the state has met its burden of production at trial, a manifest weight challenge concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Wilson, Warren App. No. CA2006-01-007,2007-Ohio-2298, ¶ 34. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other; weight is not a question of mathematics, but depends on its effect in inducing belief. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A court considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v.Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. The question is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." Id.; State v. Blanton, Madison App. No. CA2005-04-016, 2006-Ohio-1785, ¶ 7.
 {¶ 47} At trial, the victim testified that appellant, his mother, engaged in sexual conduct with him. He testified that he, appellant, Edward, and his younger brother watched a pornographic film and they then were required to engage in group sex in which appellant placed her mouth on his genitals. The victim also testified that appellant required him to suck on her breasts and lick her genitals. The victim's testimony was supported by his brother and stepsister. When questioned on cross-examination, the victim testified that he lied to the children's services worker when first questioned at his school. Also on cross-examination, the victim stated that he was not truthful when estimating the number of times that he had *Page 11 
been abused.
 {¶ 48} After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot say that the trial court clearly lost its way and that appellant's conviction must be reversed. The trier of fact was in the best position to observe and assess witness credibility. State v.Tyler (1990), 50 Ohio St.3d 24, 32, citing State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 49} Based on the foregoing, appellant's fifth assignment of error is overruled.
 {¶ 50} Assignment of Error No. 6:
 {¶ 51} "THE COURT ERRED IN SENTENCING THE APPELLANT TO THE MAXIMUM SENTENCE WHEN SHE HAD NO PRIOR CRIMINAL HISTORY."
 {¶ 52} In her final assignment of error, appellant argues that the maximum sentence imposed by the court was improper when she had no prior criminal history.
 {¶ 53} Trial courts "have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, ¶ 100. An appellate court may not disturb an imposed sentence unless it finds by clear and convincing evidence that the sentence is not supported by the record, or is "otherwise contrary to law." R.C. 2953.08(G)(2). Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v.Rhodes, Butler App. No. CA2005-10-426, 2006-Ohio-2401, ¶ 4, citingState v. Boshko (2000), 139 Ohio App.3d 827, 835.
 {¶ 54} We find no abuse by the trial court in sentencing appellant to the maximum prison term. State v. Brandenburg, Butler App. No. CA2007-07-155, 2008-Ohio-3593, ¶ 51.
 {¶ 55} Appellant's sixth assignment of error is overruled. *Page 12 
 {¶ 56} Judgment affirmed.
WALSH, P.J., and YOUNG, JJ., concur.
[1] The first and fifth count related to appellant's alleged sexual activity with S.P. The second, third, and fourth count related to appellant's alleged sexual activity with J.S.
[2] Appellant was found guilty of count three.
[3] Appellant notes that the prosecution filed a motion in limine requesting that the court prevent the introduction of any prior sexual abuse or experience of any of the three victims during the course of trial. Appellant states in her brief that by filing "this motion the state requested that the court enforce [the rape shield] law during the course of the trial." Appellant argues that the questioning was a violation of the Ohio rape shield law and the trial court erred by failing to instruct the jury to disregard the resulting testimony. *Page 1