OPINION
{¶ 1} Defendant-appellant, Kenneth J. Rutherford, Jr., appeals his conviction and sentence in the Butler County Court of Common Pleas for burglary and aggravated arson, for which he was sentenced to 16 years in prison and ordered to pay restitution "in an amount not to exceed $135,000."
 {¶ 2} On February 7, 2007, Rutherford, his cousin, Jerome J. Matthews, and Nicholas A. Harris were each indicted on one count of burglary in violation of *Page 2 
R.C. 2911.12(A)(2), a felony of the second degree. Rutherford, alone, was also indicted on one count of aggravated arson in violation of R.C. 2909.02(A)(1), a felony of the first degree.
 {¶ 3} The charges stemmed from allegations that on May 14, 2006, Rutherford, Matthews, and Harris broke into Michael Carnes' apartment to steal drugs, and while there, Rutherford started a fire, using a lighter and a can of Lysol. Matthews and Harris subsequently agreed to plead guilty to complicity to burglary and to testify truthfully against Rutherford in exchange for receiving two-year prison sentences for that offense and being permitted to serve those sentences concurrently with sentences they received in Hamilton County on unrelated charges.
 {¶ 4} Following a jury trial, Rutherford was convicted as charged, and the trial court sentenced him to serve seven years in prison for his burglary conviction and nine years in prison for his aggravated arson conviction, and ordered him to serve those sentences consecutively. The trial court also ordered Rutherford to pay restitution to Carnes "in an amount not to exceed $135,000."
 {¶ 5} Rutherford now appeals his conviction and sentence, assigning the following as error:
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT COMMENTED ON HIS RIGHT TO REMAIN SILENT."
 {¶ 8} Rutherford argues the trial court erred when during the trial, it expressed surprise at his decision not to present any witnesses on his behalf. Specifically, he contends that the trial court's comments adversely impacted his right to remain silent and to not present any evidence on his behalf.
 {¶ 9} During his opening statement, Rutherford indicated he was going to present an alibi defense to the charges. After the state presented its evidence and rested its case, the *Page 3 
following exchange occurred between the trial court and defense counsel in front of the jury:
 {¶ 10} "THE COURT: The State having rested, the defendant now has an opportunity to present a case. As I have already previously advised you, the defendant does not have to present any evidence. Do you wish to present any evidence?
 {¶ 11} "[Defense counsel]: No, Your Honor, we are not going to present any evidence.
 {¶ 12} "THE COURT: Very well. Well, I'll have to admit, ladies and gentlemen, this came as quite a surprise to me. I didn't anticipate that."
 {¶ 13} At a sidebar conference, the state claimed that it had been "sandbagged" by defense counsel's decision to rest his case without presenting any witnesses and requested permission to reopen its case to present Shawn Orr as a witness. The trial court, over defense counsel's objection, granted the state's request to reopen its case, and the state called Orr as a witness.
 {¶ 14} Rutherford did not object to the trial court's statement that it was surprised by his decision to not present a defense, nor did he ask the trial court to issue any curative instruction to the jury regarding that statement. Nevertheless, Rutherford contends that the trial court's expression of surprise rises to the level of either plain error or structural error because it "constituted an improper and impermissible comment on [his] right to remain silent and right to not call any witnesses on his behalf." We disagree with this argument.
 {¶ 15} "Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68. An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. State v. Baldev, Butler App. No. CA2004-05-106,2005-Ohio-2369, ¶ 12; State v. Krull, 154 Ohio App.3d 219,2003-Ohio-4611, ¶ 38. `Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' *Page 4 
at ¶ 12, citing State v. Long (1978), 53 Ohio St.2d 91, 95." State v.Carmen, Clinton App. No. CA2007-06-030, 2008-Ohio-5842, ¶ 22.
 {¶ 16} "`A structural error is a constitutional defect that *** affects the framework within which the trial proceeds, rather than simply being an error in the trial process itself.' State v.Fields, Butler App. No. CA2005-03-067, 2005-Ohio-6270, ¶ 27, citingState v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297. Structural errors permeate the entire conduct of the trial from beginning to end so that the trial cannot reliably serve its function as a vehicle for the determination of guilt or innocence. Arizona v. Fulminante (1991),499 U.S. 279, 309-310, 111 S.Ct. 1246." In re KB., Butler App. No. CA2006-03-077, 2007-Ohio-1647, ¶ 21.
 {¶ 17} The trial court's comments did not rise to the level of plain error. Immediately before making the comment in question, the trial court reminded the jury that "the defendant does not have to present any evidence." During its final instructions to the jury, the trial court again reminded the jurors that Rutherford has a constitutional right to remain silent, and that this fact was not to be considered by them in any way. The trial court also instructed the jury that if "the Court said or did anything that you consider an indication of the Court's view of the facts, you are instructed to disregard it."
 {¶ 18} Juries are presumed to follow the trial court's instructions, see State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 93, and there is nothing in the record to show that the jury did not do so here. Therefore, the record fails to establish that the outcome of these proceedings would have been different absent the alleged error.Carmen, 2008-Ohio-5842 at ¶ 22.
 {¶ 19} The trial court's comments also did not constitute structural error. In In re KB., 2007-Ohio-1647 at ¶ 22, this court found structural error to exist where a juvenile court made "repeated statements regarding [a juvenile delinquent's] silence" and stated that it viewed the delinquent's "failure to testify as `critical.'" Id. Specifically, we found that the juvenile court's *Page 5 
statements "strongly suggest a shift in the burden of proof from the state to [the juvenile delinquent], requiring [the delinquent] to explain his conduct[,]" and that "[s]uch a shift in the burden of proof fundamentally impacts how the trier of fact makes its ultimate decision." Id.
 {¶ 20} This court distinguished the facts and circumstances in In reKB. from cases involving "an isolated comment [made] by a prosecutor during closing argument[,]" noting that the juvenile court in In reKB. "made multiple, specific references to [the juvenile delinquent's] failure to testify[.]" See id. at ¶ 23. We concluded by stating that "[u]nder the narrow circumstances of this case, in which the record strongly suggests actual consideration by the trier of fact of an accused's silence, we find structural error requiring reversal." Id.
 {¶ 21} This case is readily distinguishable from In re KB., because in this case, the trial court did not make repeated references to Rutherford's silence. Instead, the trial court made a single comment expressing surprise at defense counsel's decision not to present any witnesses after defense counsel had indicated in his opening statement that he would present an alibi defense. Also, the trial court instructed the jury on several occasions that Rutherford had a right to remain silence, and that his exercise of that right was not to be held against him. Therefore, no structural error occurred as a result of the trial court's comments in this case.
 {¶ 22} Rutherford's first assignment of error is overruled.
 {¶ 23} Assignment of Error No. 2:
 {¶ 24} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT LIMITED HIS RIGHT OF CROSS-EXAMINATION."
 {¶ 25} Rutherford argues the trial court improperly "limited his right of cross-examination" by allowing one of the state's witnesses, Michael Carnes, to exercise his Fifth Amendment right against self-incrimination during cross-examination. Rutherford asserts that the trial court should have ordered all of Carnes' testimony to be stricken from the record *Page 6 
or "engaged in a discussion with the State and the defense in order to provide Carnes with a grant of immunity." Rutherford contends that the court's failure to follow one of these options constituted reversible error. We find this argument unpersuasive.
 {¶ 26} Carnes exercised his right against self-incrimination as to four questions asked of him during cross-examination but subsequently answered two of the questions on redirect examination. The two questions that were left unanswered were: (1)"You've been convicted of insurance fraud in the past, sir?"; and (2) "If anyone said that they went to your apartment to take drugs and pills, would they be telling the truth, sir?"
 {¶ 27} Rutherford asserts that his inability to cross-examine Carnes on these matters was critical because one of his defenses was that Carnes himself had arranged the break-in and arson so that he could bring a fraudulent insurance claim. Rutherford acknowledges that Carnes denied any type of collusion or fraud on direct examination but contends that the questions Carnes refused to answer on Fifth Amendment grounds were designed to undermine Carnes' denial and "plant a seed of doubt with the jury regarding [Carnes'] veracity."
 {¶ 28} However, Rutherford did not ask the trial court to strike Carnes' testimony in its entirety, nor did Rutherford request the trial court to attempt to have the state grant Carnes transactional immunity under R.C. 2945.44(A). Therefore, all but plain error has been waived as to this matter. See Crim. R. 52(B). Because Carnes' decision to exercise his Fifth Amendment right against self-incrimination probably benefitted rather than harmed Rutherford, Rutherford cannot show that the result of these proceedings would have been different absent the alleged error.Carmen, 2008-Ohio-5842 at ¶ 22.
 {¶ 29} Rutherford's second assignment of error is overruled.
 {¶ 30} Assignment of Error No. 3:
 {¶ 31} "THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY A CONVICTION FOR *Page 7 
BURGLARY AND FOR ARSON."
 {¶ 32} Rutherford argues the state presented insufficient evidence to convict him on the burglary and aggravated arson charges because it failed to present sufficient proof that he was one of the perpetrators of the crimes. Specifically, he argues that the only evidence the state presented to prove his participation in the offenses came from his alleged accomplices, Matthews and Harris, both of whom had a strong incentive to lie.
 {¶ 33} Rutherford also points out that one of the state's witnesses, Jennifer Gruesser, who lived in the apartment complex where the crimes took place, initially picked out Derron Dyson from a photo array, indentifying him as one of the men she saw at the apartment complex at the time in question, even though at trial she identified him (Rutherford) as being one of the men she saw. Rutherford also notes that another of the state's witnesses, Alicia Willis, who also lived in the apartment complex, was unable to identify him at trial as being one of the men she saw at the time in question, and Willis identified Dyson as being one of the men she saw, after Dyson had been brought into the courtroom so that Willis could compare him to Rutherford.
 {¶ 34} Rutherford's arguments are an attack on the credibility of the state's witnesses who testified in this case. The Ohio Supreme Court has repeatedly pointed out that evaluation of the credibility of witnesses is not the proper subject of review when considering a sufficiency-of-the-evidence claim. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79. Instead, "[o]n sufficiency-of-the-evidence review, `the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis sic.) Id. at ¶ 78, quoting Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781.
 {¶ 35} When the evidence is viewed in a light most favorable to the state, it is *Page 8 
apparent that the state presented sufficient evidence to convict Rutherford of burglary and aggravated arson. Gruesser identified Rutherford in court as being one of the men she saw at the apartment building at the time the fire was set, and both Matthews and Harris testified that Rutherford took part in the burglary and committed the aggravated arson. This evidence was sufficient to convict Rutherford of the crimes with which he was charged.
 {¶ 36} Consequently, Rutherford's third assignment of error is overruled.
 {¶ 37} Assignment of Error No. 4:
 {¶ 38} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ORDERED HIM TO PAY RESTITUTION `IN AN AMOUNT NOT TO EXCEED $135,000.00.'"
 {¶ 39} Rutherford argues the trial court erred in ordering him to pay restitution "in an amount not to exceed $135,000" because the court's order fails to designate a specific sum, as required under R.C. 2929.18(A)(1). We agree with this argument.
 {¶ 40} R.C. 2929.18(A)(1) states in pertinent part:
 {¶ 41} "If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."
 {¶ 42} "[T]he plain language of R.C. 2929.18(A)(1) establishes that if the trial court orders restitution at sentencing, it must determine the amount of restitution at that time." State v. Purnell,171 Ohio App.3d 446, 2006-Ohio-6160, ¶ 9.
 {¶ 43} The state concedes that the trial court erred in ordering restitution in an unfixed *Page 9 
amount and that the case must be remanded for a determination of the exact amount of restitution that Rutherford must pay.
 {¶ 44} Accordingly, Rutherford's fourth assignment of error is sustained.
 {¶ 45} The trial court's judgment is reversed as to the restitution order, and this matter is remanded for determination of the exact amount of restitution that Rutherford must pay. The trial court's judgment is affirmed in all other respects.
WALSH, P.J., and YOUNG, J., concur. *Page 1