[Cite as *State v. Smallwood*, 2020-Ohio-5556.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-19-1116

    Appellee                                Trial Court No. CR0201802691

v.

Robert Smallwood                          **DECISION AND JUDGMENT**

    Appellant                               Decided:  December 4, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Emil G. Gravelle, III, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a jury trial, defendant-appellant, Robert Smallwood, appeals the

May 15, 2019 judgment of the Lucas County Court of Common Pleas, convicting him of

felonious assault and sentencing him to six years in prison.  For the following reasons, we reverse, in part, and affirm, in part.

## I.  Background

{¶ 2} On September 12, 2018, Robert Smallwood was indicted on one count of felonious assault, a violation of R.C. 2903.11(A)(1) and (D).  This charge arose from an August 25, 2018 incident of domestic violence perpetrated by Smallwood against his then-girlfriend, S.Y.  Smallwood broke S.Y.'s ankle during the assault.

{¶ 3} The case was tried to a jury from April 8, 2019, to April 10, 2019; Smallwood acted pro se at trial, with standby counsel appointed to assist him.  On April 11, 2019, the jury found Smallwood guilty.  The trial court sentenced Smallwood to a term of imprisonment of six years and three years' post-release control.  It imposed the costs of supervision, confinement, assigned counsel, prosecution, and costs assessed under R.C. 9.92(C), 2929.18, and 2951.021.

{¶ 4} Smallwood appealed.  He assigns the following errors for our review:

> 1.  The trial court erred and deprived Mr. Smallwood of his right to counsel under the Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article 1 of the Ohio Constitution as the court failed to ensure that Mr. Smallwood had made a voluntary, knowing, and intelligent waiver of his right to counsel.
>
> 2.  The trial court erred when it failed to give Appellant proper notification pursuant to R.C. 2947.23(A).

2.

## II. Law and Analysis

{¶ 5} In his first assignment of error, Smallwood argues that the trial court erred when it failed to ensure that he knowingly, intelligently, and voluntarily waived his right to counsel. In his second assignment of error, he argues that the trial court failed to notify him that community service could be imposed if he fails to pay the costs of prosecution.

### A. Right to Counsel

{¶ 6} In his first assignment of error, Smallwood argues that the trial court deprived him of his right to counsel by failing to ensure that he knowingly, intelligently, and voluntarily waived his right to counsel. Smallwood argues that the trial court conducted an inadequate colloquy, failing to advise him of the dangers inherent in self-representation, the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

{¶ 7} Smallwood also maintains that he never requested to represent himself—rather, the trial court suggested that if he wanted to continue filing frivolous motions, he could represent himself, then required Smallwood to make a decision on January 9, 2019. He insists that he told the court that he wanted an attorney, but the court kept asking him what he wanted to do until Smallwood relented and said that he would represent himself with the assistance of standby counsel.

3.

**{¶ 8}** "It is axiomatic that a criminal defendant has a right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as well as a right to act as his own counsel during trial, if he so chooses." *State v. Harris*, 6th Dist. Erie No. E-02-019, 2003-Ohio-5190, ¶ 23, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). But "before a defendant may serve as his own counsel, the defendant must knowingly, intelligently, and voluntarily waive his right to assistance of counsel." *State v. Weiss*, 92 Ohio App.3d 681, 684, 637 N.E.2d 47 (9th Dist.1993). Under Crim.R. 44(C), "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22." In serious offense cases, the waiver must be in writing. *Id.*

**{¶ 9}** "Whether a defendant knowingly, intelligently, and voluntarily waived the right to counsel is an issue that we review de novo." *State v. Reece*, 6th Dist. Lucas No. L-17-1314, 2019-Ohio-2259, ¶ 14. In doing so, we must independently examine the record to determine "whether the totality of circumstances demonstrates a knowing, intelligent, and voluntary waiver of the right to counsel." *State v. Guess*, 4th Dist. Hocking No. 11CA33, 2014-Ohio-771, ¶ 9.

### 1. The Events Leading to Smallwood's Self-Representation

**{¶ 10}** Counsel was appointed for Smallwood at his September 18, 2018 arraignment. Following arraignment and before his next court appearance on October 16, 2018, however, Smallwood himself filed several handwritten motions, including motions for suppression, dismissal, and access to grand-jury transcripts and *Brady* material.

4.

{¶ 11} When Smallwood appeared with counsel for a pretrial on October 16, 2018, counsel began to speak on Smallwood's behalf but was quickly interrupted by Smallwood, who made an oral motion for dismissal. The trial court cautioned Smallwood that he was represented by counsel, he is untrained in the law, and his conduct in filing his own pro se motions was not beneficial to him. He recommended that Smallwood consult with his lawyer whether there was any merit to the issues raised in his handwritten motions and reset the matter for pretrial on November 6, 2018.

{¶ 12} Leading up to the November 6, 2018 pretrial, Smallwood filed "supplemental" handwritten motions. Then at the pretrial, appointed counsel informed the court that he had found no merit to the various issues Smallwood raised in his pro se filings and that his relationship with Smallwood had deteriorated to the point that he could no longer represent him. The trial court again told Smallwood that he was acting contrary to his own best interest and informed him that his attorney is duty-bound to represent him in a manner that complies with the law and procedural rules. It told Smallwood that he is not entitled to an attorney that he "likes," and that if he wished to proceed in a manner contrary to the principles to which his attorney is bound, his other option would be to represent himself or to represent himself with the help of advisory counsel. The court told him:

> You have a legal right to do that. I would highly advise against that, but if you continue to do this and to act in this way, then it is apparent to me that's what you want to do, and I'm not going to prevent you from

5.

doing that. Option three is represent yourself, and upon your request, I will appoint advisory counsel, which means you're still representing yourself but if you have a legal question you certainly can consult with him with respect to any legal question. You may not like the answer and it may not be the answer you want, but I'll do that. So those are your three options.

{¶ 13} Smallwood told the court: "I just ask for a 6th Amendment advocate, that's it, sir." The court asked Smallwood what he meant. Smallwood responded: "An attorney that's going to represent me to the best of his ability." The court expressed its concern that Smallwood was going to have issues with anyone it would appoint.

{¶ 14} Smallwood said two more times that he wanted a "6th Amendment advocate." The court appointed a second lawyer for Smallwood. The case was reset for another pretrial on November 20, 2018.

{¶ 15} Despite the appointment of this second attorney, Smallwood filed handwritten correspondence with the clerk, requesting grand jury transcripts. When Smallwood and his second appointed counsel appeared for the November 20, 2018 pretrial, counsel indicated that he and Smallwood worked through some issues, but noted that Smallwood was requesting that the court rule on the motions he previously filed on his own behalf. The court denied these pending motions. The court assured Smallwood of his attorney's high level of skill and recommended that Smallwood allow counsel to be the lawyer. The case was reset for pretrial on December 11, 2018.

6.

{¶ 16} Counsel filed motions on Smallwood's behalf leading up to this December 11, 2018 pretrial, but once again, Smallwood filed his own handwritten motions, again requesting grand jury transcripts. Nevertheless, the pretrial went forward without any changes made to Smallwood's representation.

{¶ 17} On December 18, 2018, Smallwood appeared for another pretrial with counsel. Again, in the days leading up to this pretrial, he filed additional handwritten motions. Then at the pretrial, he asked through counsel and on his own behalf, for findings of fact and conclusions of law respecting the motions that the court had already denied. The court continued the case to January 9, 2019. Smallwood filed more handwritten pro se motions.

{¶ 18} The court explained in a judgment filed on January 9, 2019, that it had denied all of Smallwood's motions because Smallwood was not entitled to hybrid representation. And at the pretrial that same day, Smallwood's second appointed counsel expressed concern about the motions Smallwood wanted him to file and suggested that the court inquire of Smallwood whether he wanted counsel to continue to represent him. The court, counsel, and Smallwood engaged in the following dialogue:

> [Counsel]: * * * I would ask the Court to make a determination for Mr. Smallwood if he wants me to continue to represent him. He's making references to filing motions to suppress statements of other people, not him, and I've had a discussion with him and told him that that's not feasible under the law. If he believes that he has better knowledge of the law than I

7.

do then I think he should represent himself, so I just ask the Court to make an inquiry.

The court: * * * Mr. Smallwood, it's my understanding from [counsel] that you continue to insist upon your attorney * * * filing motions * * * he believes are inappropriate and inconsistent with the competent and zealous representation, and so if that is, in fact, the case, now is your opportunity to tell me what it is that you wish [counsel] to do.

Mr. Smallwood: First of all, I'd like for him to come over here and give me the discovery, which he has now had for three weeks. He said he was coming over on the 26th and he never showed up, so, I mean, now he wants to schedule for trial. We haven't even gone over the discovery or anything.

[Counsel]: Your Honor, that is correct, and I have told him I have other clients than he. We did not have a trial date, and I told him I would bring the discovery over there in time to prepare for trial.

The court: Mr. Smallwood, the Court is contemplating a trial date of March the 4th, which is plenty enough time to discuss with you and disclose to you any additional discovery you haven't already seen. Now, I find your statements and representations to this Court a bit disingenuous because [counsel] is at least the second attorney, and I find it hard to

8.

believe that the first attorney you had didn't go over the discovery with you as well.

Mr. Smallwood:  He didn't.

The court:  So with the representations that [counsel] has indicated that he will come over and disclose to you and discuss with you this discovery, whatever it is that you wish to see or haven't seen, what is it you would like me to do?

Mr. Smallwood:  What do you mean, what is it I'd like to do?  I mean, I'd like to go over the discovery to prepare for trial.

The court:  All right.  We're set for trial on March the 4th.  I get the impression you've got some issue with that?

Mr. Smallwood:  No, I don't.  Actually I was going to ask for it to be set for trial.

The court:  Okay.  Well, Mr. Smallwood, as you will read in my findings of fact and conclusions of law, you are not entitled to a [hybrid] representation of which you have been engaging in, so either you're going to represent yourself or you're going to allow competent and respected counsel to represent you.  You can't do both.

Mr. Smallwood:  Okay.  At the time--

The court:  No, no.  Right now we're going to stop all this.  We need to make a decision right now, and if it is your choice to represent yourself,

you certainly are capable I presume, but you certainly have a right to do that. But you're not going to continue the [hybrid] representation. You have counsel and you continue to file these motions pro se of your own without the knowledge of your attorney. That is inappropriate and I'm not going to continue to allow that to happen, so if you'd like to represent yourself, let's do that.

So we're going to get to the bottom of that today. What would you like to do? Do you want to represent yourself or [counsel] to continue to represent you? And, by the way, you're not entitled to an attorney who you choose.

Mr. Smallwood: I'm entitled to a 6th Amendment advocate, that's what I'm entitled to.

The court: That's correct, relative.

[Counsel]: * * * [T]he motions that he's talking about filing simply are motions to suppress the statements of witnesses in this case. I told him that's inappropriate, he doesn't have a right under the constitution or any law that I've ever read indicating that he would be allowed to file a motion to suppress a witness' statement, and I have no intentions of filing such motions, which I have explained to him also. So if I remain on this case, I will remain with the understanding that I will not be filing frivolous

motions. If he wants those motions filed, then he's more than welcome to represent himself.

The court: You heard [counsel], so what is it that you would like to do? Would you like to represent yourself?

Mr. Smallwood: I mean, it doesn't make me any difference at this point because I feel like I'm going through a sham of a legal process anyway. My due process been violated since the beginning.

The court: Oh, you have an opinion on that but you can't answer a straight question? *Do you want to represent yourself or not*?

Mr. Smallwood: *I mean, if need be, yes*.

The court: Well, you tell me.

Mr. Smallwood: I mean, *if he's not going to work to my favor and defend my constitutional rights, I mean, of course I'll represent myself if that's what it comes down to*.

[Counsel]: Again, Your Honor, I will represent him as an advocate as zealously as possible as long as it is within the confines of the law, and I will not pursue any foolish endeavors that he may be interested in doing. I told him before when I first went and talked to him that I would not be chasing rabbits down a rabbit hole if there was nothing to be done or if it was simply something frivolous, and if that's what he wants, I have no problem asking the Court to withdraw.

The court: [Counsel] is clearly articulating to you and this Court what it is that you want. He is representing to me that the stuff you all are discussing and the things of which you want him to file, in his opinion, are frivolous and, as such, he's not going to file it. So if you are intent on the belief that since he refuses to file those motions, he's not representing you the way you want to be represented. No attorney is going to – competent attorney who is assigned to represent you, is going to file that, so under those circumstances there's no other choice—*if that's your position, there's no other choice but for you to represent yourself.*

Mr. Smallwood: Okay. Well, let's ask [counsel] what investigation have he done in this case? What investigation have he done? He filed a discovery four weeks ago and got it and I haven't seen it yet.

[Counsel]: I've read the discovery. We have not had a trial date. There's no reason for me to start investigating your case. I would prepare it for trial at the appropriate time; however, if that's not suitable for you, you're more than welcome to do it yourself and I have no problems asking for permission to withdraw.

The court: Again, I'm asking you a straight question, again. What is it that you would like to do? [Counsel] has set forth the parameters in which he will continue to represent you.

Mr. Smallwood:  Okay.  *Well, I'll represent myself and I just ask the Court to appoint me shadow counsel* and ask [counsel] to turn over the discovery to me as soon as possible.

[Counsel]:  That can be done.

The court:  Well, here's what I'm going to do:  How old are you Mr. Smallwood?

Mr. Smallwood:  47.

The court:  And how far did you go in school?

Mr. Smallwood:  I went to eleventh grade.

The court:  Are you able to read, write, and understand the English language?

Mr. Smallwood:  Yes.  I have a GED.

The court:  Are you under the influence of drugs or alcohol now?

Mr. Smallwood:  No, I'm not.

The court:  You understand if you choose to represent yourself you will be held to the same rules of evidence that a lawyer must follow.  Your lack of knowledge of the rules will not prevent this Court from enforcing the rules.  Because of your lack of knowledge and the rules of evidence, you may not be able to ask questions that you would like.  The Court will not function as your lawyer.  You will not be given any assistance unless you request such.  The Court will appoint standby counsel to assist you.

13.

Mr. Smallwood, you have one of the best attorneys in town, arguably northwest Ohio, standing next to you. I'm going to appoint him as standby counsel, but you're going to represent yourself. It's up to you, if you wish to ask [counsel] any questions in the assistance of your case, counsel will be ready to assist if necessary. Representing yourself may impart a negative impression upon the jury so you should understand that. Any other questions?

Mr. Smallwood: No.

(Emphasis added.)

### 2. Execution of the Waiver of Right to Counsel

{¶ 19} On April 2, 2019—nearly three months later and the week before trial—the court held a hearing on the case, at which time it presented Smallwood with a waiver of right to counsel form. The court, counsel, and Smallwood engaged in the following discussion:

The court: * * * Mr. Smallwood, as you well know, you have elected to represent yourself. I have appointed * * * standby counsel. It is my understanding that this case is set for trial, I believe April 8th.

Mr. Smallwood: Yes.

* * *

The court: All right. And what I'm going to do, Mr. Smallwood, I'm going to give you another document. I'm going to give you this waiver

14.

of counsel.  *I understand [counsel] and you have gone over this document.*

*I'd like you to go over it again with [counsel].  If you understand it, execute*

*your signature, as well as your initials to each of the statements on that*

*document.*

(Emphasis added.)

{¶ 20} Smallwood initialed each line of the written waiver of counsel, acknowledging that he understood (1) he has the right to be represented by counsel and to have free counsel appointed if indigent; (2) the nature of the charges and the elements of those charges; (3) the permissible range of sentences or fines for the offenses charged; (4) he will be bound by the applicable procedural and evidentiary rules; (5) there are possible defenses to the charges that may be lost permanently if not raised at trial; (6) he may have rights that may be lost if not timely asserted, and if errors are not raised or timely objected to, they may be lost permanently; (7) the trial judge may terminate his self-representation if he deliberately engages in serious and obstructionist misconduct; (8) standby counsel has been appointed to aid in his defense and when he requests assistance and he will attend the proceedings and be available for consultation and advice; and (9) by electing to represent himself, he cannot argue on appeal that the quality of his own defense amounts to a denial of effective assistance of counsel.  Smallwood further acknowledged:  "I hereby voluntarily elect to proceed in this matter pro se and knowingly, intelligently and voluntarily waive my constitutional right to counsel."

15.

**{¶ 21}** After Smallwood executed the waiver of counsel form, standby counsel indicated to the trial court that he had gone over the form with Smallwood and answered Smallwood's questions:

[Counsel]: Your Honor, I'll indicate for the record that Mr. Smallwood and I have had an opportunity to review the * * * waiver of counsel. *Any questions he entertained were answered knowingly, intelligently, and voluntarily.* He placed his signature on each document[1] and also initialed each document as it relates to the waiver of counsel in the appropriate places.

The court: Thank you, [counsel]. And Mr. Smallwood, you have had an opportunity to review this waiver of counsel. Is this your signature on this form?

Mr. Smallwood: Yes.

The court: And these are your initials acknowledging each one of the statements?

Mr. Smallwood: Yes.

The court: This is essentially a preliminary set of ground rules as we go forward. Do you understand that?

Mr. Smallwood: Yes.

* * *

---

[1] Smallwood initially waived a jury trial, but rescinded that waiver before trial.

The court: All right. And you have signed both of these documents in consultation with [counsel]; is that correct?

Mr. Smallwood: Yes.

(Emphasis added.)

### 3. Validity of Smallwood's Waiver of Right to Counsel

{¶ 22} In order to obtain a valid waiver of the right to counsel, the trial court must adequately explain to the defendant "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter," as well as the dangers and disadvantages of self-representation. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 40, 43-44, citing *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948). The waiver of the right to counsel must be "unequivocal and explicit." *State v. Belt*, 5th Dist. Richland No. 2019-CA-0082, 2020-Ohio-1302, ¶ 7.

{¶ 23} Whether there has been an intelligent waiver of the right to counsel depends on the particular facts and circumstances of each case and "the background, experience, and conduct of the accused." *State v. Suber*, 154 Ohio App.3d 681, 2003-Ohio-5210, 798 N.E.2d 684, ¶ 15 (10th Dist.), quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). And while "[t]here is no formula or script that a trial court must follow in every case in order to comport with the requirements of the Sixth Amendment," *State v. Tucker*, 2016-Ohio-1353, 62 N.E.3d 903, ¶ 11 (9th Dist.),

"[a] sketchy or minimal inquiry touching upon only some of the above-enumerated factors will not adequately establish an effective waiver of counsel." *Suber* at ¶15, citing *State v. McQueen*, 124 Ohio App.3d 444, 447, 706 N.E.2d 423 (10th Dist.1997).

{¶ 24} Under Crim.R. 44(C), waiver of counsel must occur in open court and be recorded, and where a "serious offense" is involved, as defined by Crim.R. 2(C), a waiver of counsel must be in writing. The failure to obtain a written waiver may constitute harmless error if the trial court substantially complies with Crim.R. 44(A) by making "a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel." *Martin* at ¶ 39. However, "a written waiver of counsel is not a substitute for compliance with Crim.R. 44(C), which requires an oral waiver in open court before the judge, recorded in accordance with Crim.R. 22." *State v. Owens*, 9th Dist. Summit No. 29098, 2019-Ohio-2206, ¶ 9.

{¶ 25} "There is a presumption against finding that a defendant has waived his or her right to counsel, and a trial court has a 'serious and weighty responsibility' to determine whether the accused is knowingly, intelligently, and voluntarily waiving the constitutional right to counsel." *Reece*, 6th Dist. Lucas No. L-17-1314, 2019-Ohio-2259, at ¶ 9. "Because self-representation entails the waiver of the Sixth Amendment right to counsel, a trial court's evaluation of a defendant's request for self-representation 'is fraught with the possibility of error.'" *State v. Patterson*, 3d Dist. Hancock No. 5-19-34, 2020-Ohio-1437, ¶ 17, *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir.1990).

18.

{¶ 26} Smallwood contends that the trial court did not engage him in the proper colloquy to ensure that his waiver of counsel was knowing, intelligent, and voluntary. He maintains that the court did not properly advise him of the dangers of self-representation, and failed to inform him of the nature of the charges, the statutory offenses, the range of allowable punishment, the possible defenses and circumstances in mitigation, and "all other facts essential to a broad understanding of the whole matter." He also emphasizes that the trial court did not have him sign the written waiver of counsel until April 2, 2019—three months after he began representing himself and one week before trial. At that time, he claims, the trial court instructed standby counsel to go over the form with him instead of doing so itself orally, and the waiver contained items never discussed in the trial court's colloquy.

{¶ 27} The state counters that Smallwood insisted upon self-representation as evidenced by his continued filing of pro se motions, even after numerous warnings by the court that he was not entitled to hybrid representation. It also maintains that the written waiver—reviewed and explained to him by counsel during "the earlier stages of the criminal process"—sufficed to validate the waiver.

*a. The January 9, 2019 Colloquy*

{¶ 28} Smallwood's waiver of counsel was first obtained on January 9, 2019. The topic of self-representation was raised by the trial court, not Smallwood. Smallwood expressed hesitation and repeatedly stated that he wanted a "6th amendment advocate," but ultimately resigned himself to acting pro se so that he could assert positions that the

19.

officers of the court previously assigned to the case refused to assert. The trial court appropriately advised Smallwood of some of the dangers of self-representation, including that he would be expected to follow the rules of evidence, that his lack of knowledge could pose difficulty in his ability to successfully ask questions, and that self-representation could be viewed negatively by the jury. Missing from the colloquy, however, were advisements concerning the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. Moreover, no written waiver was executed at this time.

{¶ 29} In *Martin,* 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, the Ohio Supreme Court addressed similar circumstances. In *Martin*, the defendant behaved very much as Smallwood behaved here; he filed his own motions while represented by counsel and felt that his attorney had "shot down" certain defense strategies that Martin wanted to pursue. *Id.* at ¶ 14. Counsel informed the trial court of the difficulties in the attorney-client relationship, and the trial court told Martin that if he wanted to run the case, he could represent himself with counsel present to provide advice. Martin hedged at the suggestion that his conduct suggested that he preferred self-representation, and indicated that he actually wanted to act as co-counsel and participate in his own defense. The trial court told him: "Well, it sounds like you have disagreements and you want to run the case in a particular fashion and they're not agreeing with you on that and so you have a

20.

right to represent yourself, and in fact that's what I'm going to do is I'm going to permit you to represent yourself. Now I'll let counsel sit with you during the proceedings, and when you need their advice, you ask them for their advice but you're going to run your own defense because that's apparently what you're doing." *Id.* at ¶ 15. The trial court forewarned Martin that he would be treated like a lawyer.

{¶ 30} The matter proceeded to trial and Martin made his own opening and closing statements, conducted all examination and cross-examination of witnesses, and filed a successful motion to dismiss one of the charges against him. The jury acquitted him of two counts and convicted him of one. Martin appealed, arguing that his waiver of counsel was not made knowingly, intelligently, and voluntarily. The Eighth District agreed. It reversed and remanded for retrial, holding that Martin was inadequately advised about the perils of self-representation and was not advised at all about the charges he faced, the potential penalties, or his available defenses.

{¶ 31} The Ohio Supreme Court affirmed the Eighth District judgment. It first observed that no written waiver had been obtained. It explained, however, that if the trial court substantially complied with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his right to counsel, the failure to file a written waiver would constitute harmless error. But the court concluded that the trial court did not substantially comply.

{¶ 32} First, the court observed that while Martin made statements to the effect that he would like to actively participate in his defense, he did not unequivocally state

that he wished to waive his right to counsel.  Second, the court found that the trial court did not adequately explain the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses, mitigation, or other facts essential to a broad understanding of the whole matter, and the court did not make Martin aware of the dangers and disadvantages of self-representation.  The court concluded that the record established that "[t]he trial court failed to substantially comply with Crim.R. 44(A) by failing to make a sufficient inquiry to determine whether Martin fully understood and intelligently relinquished his right to counsel." *Id.* at ¶ 45.  It remanded the case for a new trial.

{¶ 33} In *State v. Engle*, 183 Ohio App.3d 488, 2009-Ohio-1944, 917 N.E.2d 817 (2d Dist.), the Second District similarly held that the trial court failed to make a sufficient inquiry before allowing the defendant to represent himself.  In *Engle,* the trial court conducted a hearing at which it inquired of Engle concerning his desire to represent himself.  It asked Engle questions about his age and education and ascertained that Engle had represented himself (with standby counsel) in another criminal matter in 1993.  The court asked Engle whether he felt he knew the rules of evidence and criminal procedure and could make objections and carry on the case as if he was an attorney, and Engle responded affirmatively.  The court forewarned Engle that it could not help in his defense but told him that standby counsel could act as a resource.  With Engle's acknowledgment of these admonitions, the trial court allowed him to represent himself.

22.

{¶ 34} Engle was ultimately convicted of burglary and gross sexual imposition. He argued on appeal that the trial court erred in failing to obtain a valid waiver of his right to counsel. After reviewing the trial court's colloquy, the Second District agreed. It observed that the court fully probed Engle's capacity to represent himself based on his education, age, and experience, however, it found that the dialogue was silent with respect to the *Von Moltke* requirements that the waiver of the right to counsel "'be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, [and] possible defenses to the charges and circumstances in mitigation thereof.'" *Engle* at ¶ 62, quoting *Von Moltke,* 332 U.S. at 723-724. The court concluded that "[h]aving made no mention at all of those matters to defendant in relation to the case against him, the court could not discharge the duty to investigate defendant's understanding of them, which *Von Moltke* instructs is necessary to rebut the strong presumption against waiver." *Engle* at *id.*

{¶ 35} In *State v. Kievman*, 12th Dist. Clermont No. CA2013-11-081, 2014-Ohio-3008, the Twelfth District also reached this conclusion. Kievman was charged with domestic violence, obstructing official business, and resisting arrest. The court appointed a public defender, but after spending an hour-and-a-half together, the public defender advised the court that Kievman did not want her to represent her. An interpreter was utilized because Kievman's first language was Japanese. The trial court instructed the interpreter to translate exactly for Kievman a waiver of right to counsel form, which stated that "'[b]eing fully advised in open Court *counsel to represent me at no cost to*

23.

*myself* (sic) in accordance with Rule 44 Ohio Rules of Criminal Procedure, I herewith knowingly, intelligently, and voluntarily waive assignment of counsel to represent me and otherwise waive my right to be represented by counsel.'" *Id.* at ¶ 4.

{¶ 36} The trial court, with the interpreter translating, also informed Kievman that because the charge was a serious charge carrying a possible jail sentence, she had a right to counsel and if unable to afford counsel, counsel would be appointed at no cost to her. The interpreter advised the trial court that Kievman understood and wished to address the court herself. Kievman told the trial court that her English was not perfect, but she wanted to speak for herself.

{¶ 37} The trial court told Kievman that she needed to get the assistance of an attorney or waive the right to an attorney. Kievman asked if she refused the public defender now, would that mean she would have no public defender later. The trial court responded affirmatively and recommended that Kievman accept the public defender or hire someone with her own money. The trial court told Kievman that the domestic violence charge was serious and that it was "advisable" to have counsel, but Kievman responded that it had not gone well speaking to the public defender and she wanted to represent herself.

{¶ 38} Kievman told the trial court that she wanted to sign the waiver of counsel form. The trial court told her, "'[a]lright, sign the document[.]'" *Id.* at ¶ 7. Kievman then asked if her only two choices were to accept representation from the public defender or sign the waiver of counsel form. *Id.* The trial court told Kievman that it was apparent

24.

that she did not understand, told her that she needed an attorney to explain her choices to her, and recommended that she allow the public defender to represent her. Kievman insisted that she did not know much about the law, but she knew what had happened and wanted to represent herself.

{¶ 39} Kievman signed the waiver of counsel form, and the trial court asked her, "you've been advised of your right to counsel and you've signed a waiver of your right to counsel, correct?" Kievman, through the interpreter, responded "Yes." *Id.* at ¶ 8. The trial court found that Kievman knowingly, intelligently, and voluntarily waived her right to counsel against the court's advice.

{¶ 40} Before Kievman executed the waiver, the trial court explained to her that she was there on the charge of domestic violence, a first-degree misdemeanor, punishable by up to six months in jail and a fine of up to $1,000. But the court did not provide a similar explanation regarding the two additional charges. After Kievman executed the waiver of counsel form, the trial court read the three complaints charging her with domestic violence, obstructing official business, and resisting arrest, but did not explain the maximum penalties for the other two charges. It also did not discuss the possible defenses or the circumstances in mitigation. Kievman acknowledged that the public defender had previously read to her the charges against her and read to her all of the discovery.

{¶ 41} Kievman appeared for trial and asked the court to "dismiss" her waiver of counsel form and appoint new counsel. The trial court refused and told her that she

25.

would either plea or go to trial. The case proceeded to trial and the court found her guilty of domestic violence and resisting arrest but not guilty of obstructing official business. Kievman appealed, arguing that the trial court accepted her waiver of counsel without ensuring that she had a "broad understanding" of the case.

{¶ 42} The Twelfth District agreed with Kievman and reversed. It found that before Kievman executed the waiver of counsel form, "the trial court did not fully advise her of the nature of *all* of the charges against her, the range of allowable punishments for *all* of the offenses with which she was charged, or the possible defenses to *any* of those charges or the circumstances in mitigation thereof." *Id.* at ¶18. The court observed that only after Kievman signed the form did the trial court explain to her the nature of all of the charges against her by reading them to her, but it never discussed the maximum penalties for obstructing justice or resisting arrest, and did not discuss the possible defenses or circumstances in mitigation. It found that the written waiver of counsel form was couched in conclusory terms and was inadequate to cure any defects in the dialogue between Kievman and the trial court.

{¶ 43} The state argued that the public defender spoke with Kievman for an hour-and-a-half and read the charges to Kievman before arraignment, and the trial court conducted a colloquy that lasted another hour-and-a-half. The court acknowledged that "it [was] tempting to find that the colloquy between the trial court and appellant regarding her waiver of the right to counsel substantially complied with the requirements," but it was forced to conclude that it did not because of the failure to

26.

advise of the maximum penalties for two of the charges and the failure to discuss the possible defenses to the charges and circumstances in mitigation thereof for any of the three charges. *Id*. at ¶ 21. It explained that "[t]wo well-established principles control[led]" its decision: "(1) it is incumbent upon the state to prove 'an intentional relinquishment or abandonment of a known right or privilege[,]' and (2) 'courts indulge in every reasonable presumption against waiver.'" *Id.* at ¶ 22, quoting *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). After "'indulg[ing] in every reasonable presumption against waiver'" it was compelled to conclude that "the state failed to prove that appellant intentionally relinquished or abandoned her right to counsel given all of the circumstances present here, including the defects in the advice the trial court furnished to appellant at the time she signed her waiver of the right to counsel." *Id.*

{¶ 44} In *State v. Thompson*, 5th Dist. Stark No. 2000CA00283, 2001 WL 1338968 (Oct. 29, 2001), the Fifth District reached the same result. Thompson was charged with robbery and decided to represent himself. He was originally appointed a public defender, but at a pretrial, counsel told the court that Thompson no longer wanted her assistance. After a colloquy with Thompson, the trial court procured a written waiver of counsel, and ordered the public defender to serve as standby counsel. Thompson was found guilty and appealed, arguing that he did not make a knowing, intelligent, and voluntary waiver of his right to counsel.

27.

{¶ 45} The Fifth District agreed with Thompson. It reviewed the trial court colloquy leading to Thompson's waiver of counsel. The trial court asked if it was still his intention to represent himself and asked if he understood his right to appointed counsel. Thompson responded yes. Thompson was presented with the waiver form. He signed the form and verified to the court that it was his signature, he signed it of his own free will, he understood his right to have appointed counsel, he was waiving that right, and he wished to represent himself.

{¶ 46} The appellate court observed that the trial court had taken extensive steps to assess the voluntariness of Thompson's actions, but it emphasized that "Ohio law clearly requires recitation, to a defendant seeking self-representation, of the nature of the charge against him, the statutory offenses included within it, the range of allowable punishments thereunder, possible defenses to the charge and circumstances in mitigation thereof, and other facts essential to appellant's broad understanding of the matter." *Id.* at * 3. It found that the trial court failed to make this recitation to Thompson, and concluded that Thompson's waiver of counsel had not been made not knowingly, intelligently, and voluntarily.

{¶ 47} Here, we must conclude that the January 9, 2019 colloquy suffers from the same deficiencies as those in *Martin, Engle, Kievman,* and *Thompson.* At no time did the trial court address the information it was required to address under *Von Moltke.* The court certainly raised some of the dangers of self-representation, such as the difficulty Smallwood may encounter in complying with the procedural rules and evidentiary rules,

28.

the fact that the trial court could not assist him, and the negative impression that may be imparted by his self-representation. But none of the other information was addressed. *See also State v. Youngblood*, 2d Dist. Clark No. 05CA0087, 2006-Ohio-3853, ¶ 18 (finding that "[d]efendant was not given adequate warnings about the seriousness of the trial, the possible results it could have for his liberty and life, and the dangers and disadvantages of self-representation, so that the record establishe[d] that he knew what he was doing and that his choice was made with eyes open."); *State v. Cline*, 164 Ohio App.3d 228, 2005-Ohio-5779, 841 N.E.2d 846, ¶ 76 (2d Dist.) (commending the trial judge for his explanation of why self-representation was not in defendant's best interest, but finding that colloquy omitted explanations deemed essential in *State v. Martin*: "the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses, mitigation, or other facts essential to a broad understanding of the whole matter.").

### b. The April 2, 2019 Waiver

{¶ 48} The trial court had an opportunity to remedy the shortcomings of the January 9, 2019 waiver proceedings on April 2, 2019. It was at this hearing that it presented Smallwood with the waiver of counsel form.[2] But again, the trial court neglected at this hearing to advise Smallwood of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible

---

[2] *But see Youngblood* at ¶ 19 ("Defendant's waiver was not put in writing when it was accepted, but was executed by Defendant only after the prejudicial effects of his self-representation had occurred.")

defenses to the charges and circumstances in mitigation thereof, or other facts essential to a broad understanding of the whole matter. Instead, it relied on standby counsel to do so.

{¶ 49} We are aware of no Ohio case that specifically addresses whether a trial court may delegate to standby counsel the obligation to provide the information necessary to obtain a valid waiver of the right to counsel. This issue has been addressed, however, by some federal courts.

{¶ 50} In *United States v. Hansen*, 929 F.3d 1238, 1259 (10th Cir.2019), for instance, the Tenth Circuit Court of Appeals made clear that a trial court cannot delegate to defense counsel the responsibility of ensuring that defendant is making a knowing, voluntary, and intelligent waiver of counsel. It explained: "[A]lthough counsel for the government and the defense may properly aid the court in ensuring that it has conducted the necessary inquiries to provide a foundation for a defendant's knowing and intelligent waiver of the right to counsel, the constitutional responsibility to conceive of and propound the proper inquiries rests squarely on the shoulders of the trial court and cannot be delegated to others." It emphasized that it is the independent obligation of the trial court "to provide warnings to the defendant on topics important to his waiver of the right to counsel that are thorough enough that we may conclude that the defendant knowingly and intelligently waived his right to counsel." *Id. See also United States v. Hamett*, 961 F.3d 1249, 1256 (10th Cir.2020), quoting *United States v. Padilla*, 819 F.2d 952, 957 (10th Cir.1987 ("[T]he *Von Moltke* factors 'must be conveyed to the

defendant *by the trial judge* and must appear on the record so that our review may be conducted without speculation.'" (emphasis in original)).

{¶ 51} We agree with the conclusion reached by the Tenth Circuit. It is the obligation of the trial court to ensure that a waiver of the right to counsel is made knowingly, intelligently, and voluntarily. It may not be delegated to standby counsel. And while we are unaware of any Ohio case that has explicitly addressed this issue, Ohio courts certainly recognize the great responsibility of the trial court to ensure that the waiver of the right to counsel is knowing, intelligent, and voluntary:

[A] court cannot abdicate its responsibility to sufficiently inform a criminal defendant as to that defendant's waiver of the right to counsel merely because that defendant manifests a desire, however eloquently stated, to represent himself. Nor can the court satisfy this responsibility by standby counsel. However laudable, such appointments do not absolve the trial court from its responsibility to insure that the defendant is aware of the range of allowable punishments, the possible defenses to the charges and circumstances that might serve in mitigation, as well as any other facts that would demonstrate that the defendant understood the entire matter. *State v. Thompson*, 8th Dist. Cuyahoga No. 85483, 2005-Ohio-6126, ¶ 29, quoting *State v. Richards* (Sept. 20, 2001), Cuyahoga App. No. 78457.

{¶ 52} Important to our conclusion is the fact that by delegating this duty to counsel—who spoke with Smallwood off the record—there is no transcript of

proceedings upon which we may conclude that the information conveyed to Smallwood was complete and accurate. We are also unable to examine Smallwood's questions and the responses provided to him—information that would also assist in determining the validity of the waiver.

{¶ 53} As for the written waiver Smallwood signed, that waiver also does not detail the information that was required to be conveyed to Smallwood. For example, the waiver does not state that Smallwood was charged with felonious assault, a second-degree felony, which carries a possible penalty of two, three, four, five, six, seven, or eight years in prison, a fine of up to $15,000, a three-year period of post-release control, and the possible imposition of a variety of other costs; rather, it states simply: "I understand the nature of the charges against me and the elements of each of those charges," and "I am aware of the permissible range of sentences and/or fines for the offenses charged."

{¶ 54} In *Engle*, 183 Ohio App.3d 488, 2009-Ohio-1944, 917 N.E.2d 817, Engle executed a written waiver, stating that "having been fully advised of my right to have assigned counsel for the above captioned case, and after been fully advised by the Court of the nature of the charges against me, the statutory offenses within, the range of allowable punishments for each offense, possible defenses and mitigation," he was making a "knowing, voluntary and intelligent waiver of [his] right to counsel." *Id.* at ¶ 60. In addition to finding the colloquy inadequate, the appellate court concluded that the written waiver was not sufficient to rebut the strong presumption against waiver.

32.

{¶ 55} Here, as in the other cases we have cited, given the presumption against a finding of waiver of the right to counsel, we are compelled to conclude that a valid waiver was not obtained here.

{¶ 56} Accordingly, we find Smallwood's first assignment of error well-taken.

### B.  R.C. 2947.23(A)

{¶ 57} In his second assignment of error, Smallwood argues that his case must be remanded because contrary to R.C. 2947.23(A), the trial court failed to notify him that community service could be imposed if he fails to pay the costs of prosecution.  The state responds that the trial court imposed a prison term, and the notification contained in R.C. 2947.23(A) need only be given where the trial court imposes community service or other nonresidential sanction.  Therefore, the trial court was not required to provide the notification.

{¶ 58} In light of our disposition of Smallwood's first assignment of error, we deny as moot Smallwood's second assignment of error.

### III.  Conclusion

{¶ 59} We find Smallwood's first assignment of error well-taken.  In eliciting Smallwood's waiver of the right to counsel, the trial court failed to advise him of the nature of the charge against him, the statutory offenses included within it, the range of allowable punishments thereunder, possible defenses to the charge and circumstances in mitigation thereof, and other facts essential to appellant's broad understanding of the matter, as was required to ensure that such waiver was knowing, intelligent and

33.

voluntary.  To the extent that the trial court purported to delegate to standby counsel the responsibility of making these advisements, we find that the responsibility for making the necessary advisements lies solely with the trial court.

{¶ 60} We deny as moot Smallwood's second assignment of error.

{¶ 61} We reverse, in part, and affirm, in part, the May 15, 2019 judgment of the Lucas County Court of Common Pleas.  We remand this matter to the trial court for a new trial.  The state is responsible for the costs of this appeal under App.R. 24.

Judgment affirmed, in part, and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.